[Civ. No. 14800. Third Dist. Apr. 29, 1976.]

HELMUTH FRED KINDT, Plaintiff and Appellant, v.
H. R. KAUFFMAN et al., Defendants and Respondents.

## COUNSEL

Friedman, Collard & Kauffman, Friedman, Collard & Poswall and Wade R. Thompson for Plaintiff and Appellant.

Sedgwick, Detert, Moran & Arnold and Mark W. Hudson for Defendants and Respondents.

## OPINION

**THE COURT.**\*—A tavern customer here sues a tavern keeper, alleging that the latter negligently sold him alcoholic beverages when plaintiff was obviously intoxicated, in violation of Business and Professions Code section 25602, causing his involvement in a later automobile collision with injury to himself. The trial court sustained the tavern keeper's general demurrer without leave to amend. Plaintiff appeals from the ensuing judgment of dismissal.

---

\*Before Friedman, Acting P. J., Paras, J., and Evans, J.

California courts for many years adhered to the common law rule rejecting a liquor seller's civil liability for damages suffered by a patron or a third person injured by such patron as a result of the latter's intoxication. In *Vesely* v. *Sager* (1971) 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151], the California Supreme Court partially abrogated the common law rule. Limiting itself to injury claims of third persons, the court ruled that section 25602 of the Business and Professions Code, making it a misdemeanor to furnish alcoholic beverages to an obviously intoxicated person, was designed to protect members of the general public from injury resulting from excessive use of intoxicating liquor. The Supreme Court stated:

"To the extent that the common law rule of nonliability is based on concepts of proximate cause, we are persuaded by the reasoning of the cases that have abandoned that rule. The decisions in those jurisdictions which have abandoned the common law rule invoke principles of proximate cause similar to those established in this state by cases dealing with matters other than the furnishing of alcoholic beverages. (See *Schwartz* v. *Helms Bakery Limited* (1967) 67 Cal.2d 232 [60 Cal.Rptr. 510, 430 P.2d 68]; *Stewart* v. *Cox* (1961) 55 Cal.2d 857, 863-864 [13 Cal.Rptr. 521, 362 P.2d 345]; *Richardson* v. *Ham* (1955) 44 Cal.2d 772, 777 [285 P.2d 269]; *McEvoy* v. *American Pool Corp.* (1948) 32 Cal.2d 295, 298-299 [195 P.2d 783]; *Mosley* v. *Arden Farms Co.* (1945) 26 Cal.2d 213, 218 [157 P.2d 372, 158 A.L.R. 872]; *Stasulat* v. *Pacific Gas & Elec. Co.* (1937) 8 Cal.2d 631, 637 [67 P.2d 678]; Prosser, *Proximate Cause in California* (1950) 38 Cal.L.Rev. 369.) Under these principles an actor may be liable if his negligence is a substantial factor in causing an injury, and he is not relieved of liability because of the intervening act of a third person if such act was reasonably foreseeable at the time of his negligent conduct. (*Stewart* v. *Cox, supra,* 55 Cal.2d at pp. 863-864; *Richardson* v. *Ham, supra,* 44 Cal.2d at p. 777; *Eads* v. *Marks* (1952) 39 Cal.2d 807, 812 [249 P.2d 257]; *Benton* v. *Sloss* (1952) 38 Cal.2d 399, 405 [240 P.2d 575]; *Mosley* v. *Arden Farms Co., supra,* 26 Cal.2d at p. 218; *Fuller* v. *Standard Stations, Inc.* (1967) 250 Cal.App.2d 687, 691 [58 Cal.Rptr. 792]; *Ewert* v. *Southern Cal. Gas Co.* (1965) 237 Cal.App.2d 163, 169-173 [46 Cal.Rptr. 631]; Rest.2d Torts, §§ 302, 302A, 431, 447.) Moreover, 'If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby.' (Rest.2d Torts, § 449; *Schwartz* v. *Helms Bakery Limited, supra,* 67 Cal.2d at pp. 241-242;

*Richardson* v. *Ham, supra,* 44 Cal.2d 772, at p. 777; *McEvoy* v. *American Pool Corp., supra,* 32 Cal.2d 295, at p. 299.)"

On the subject of duty of care, the Supreme Court continued:

"A duty of care, and the attendant standard of conduct required of a reasonable man, may of course be found in a legislative enactment which does not provide for civil liability. [Citations.] In this state a presumption of negligence arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm which the plaintiff suffered as a result of the violation of the statute. (*Alarid* v. *Vanier* (1958) 50 Cal.2d 617 [327 P.2d 897]; *Satterlee* v. *Orange Glenn School Dist.* (1947) 29 Cal.2d 581 [177 P.2d 279].) The Legislature has recently codified this presumption with the adoption of Evidence Code section 669: 'The failure of a person to exercise due care is presumed if: (1) He violated a statute, ordinance, or regulation of a public entity; (2) The violation proximately caused death or injury to person or property; (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.' (Subd. (a).)

"In the instant case a duty of care is imposed upon defendant Sager by Business and Professions Code section 25602, which provides: 'Every person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage to any habitual or common drunkard or to any obviously intoxicated person is guilty of a misdemeanor.' This provision was enacted as part of the Alcoholic Beverage Control Act of 1935 (Stats. 1935, ch. 330, § 62, at p. 1151) and was adopted for the purpose of protecting members of the general public from injuries to person and damage to property resulting from the excessive use of intoxicating liquor." (*Id.,* at pp. 163-165.)

The *Vesely* court further declared, " . . . we do not decide . . . whether a person who is served alcoholic beverages in violation of the statute may recover for injuries suffered as a result of that violation." (*Id.,* at p. 157.)

Since *Vesely,* three Courts of Appeal and the California Legislature have considered the question here presented. *Carlisle* v. *Kanaywer* (1972) 24 Cal.App.3d 587, 591-592 [101 Cal.Rptr. 246] (First Dist., Div. Three) and *Sargent* v. *Goldberg* (1972) 25 Cal.App.3d 940, 944 [102 Cal.Rptr.

300] (Second Dist., Div. Three) both rejected a claim for the patron's own injury or death on the ground that the allegation of his intoxication showed contributory negligence as a matter of law. *Cooper* v. *National Railroad Passenger Corp.* (1975) 45 Cal.App.3d 389 [119 Cal.Rptr. 541] (Second Dist., Div. Two) reached the same result, basing it upon three grounds. That opinion, at pages 393-394, states: "First, it has been said that the drinking of alcoholic beverages and not their serving is the proximate cause of any injury that results to the drinker from his own intoxication. (*Cole* v. *Rush,* 45 Cal.2d 345, 351 [289 P.2d 450, 54 A.L.R.2d 1137]; *Hitson* v. *Dwyer,* 61 Cal.App.2d 803, 808-809 [143 P.2d 952].) Second, it is also said that even though the server is negligent and in violation of law by continuing to serve alcoholic beverages to an obviously intoxicated drinker, the drinker's cause of action is barred by his own contributory negligence (*Cole* v. *Rush, supra,* p. 356), or, we think more precisely, by his voluntary assumption of the known and conspicuous risks incident to the consumption of alcoholic beverages in bars. (*McNally* v. *Addis* (1970) 65 Misc.2d 204 [317 N.Y.S.2d 157, 180]; see *Collier* v. *Stamatis* (1945) 63 Ariz. 285 [162 P.2d 125, 127-128].) One of these known and conspicuous risks is the possibility that the bartender will negligently fail to recognize the drinker's obviously intoxicated condition.[1]" Footnote 1 provides: "[1] 'Obvious intoxication is often recognizable only after the fact, and what is patent when the drinker falls off his bar stool may have been only latent 60 seconds earlier (cf. *Hitson* v. *Dwyer,* 61 Cal.App.2d 803 [143 P.2d 952]). Visual diagnosis of intoxication has not greatly improved upon Peacock's rough and ready classification of 1829: "Not drunk is he who from the floor, Can rise alone and still drink more; But drunk is he, who prostrate lies, Without the power to drink or rise." ' " "Thus, when a drinker occupies a stool at the bar, he implicitly acknowledges the possibility that the bartender may negligently continue to serve him alcoholic beverages even though he has become intoxicated and accident-prone as a result of his condition. (See Rest.2d Torts, § 496 F.) [Fn. omitted.] Third, we note that while the bartender who serves alcoholic beverages to an obviously intoxicated patron is violating the criminal law (Bus. & Prof. Code, § 25602) *the patron is likewise violating the criminal law by being drunk in a public place* (Pen. Code, § 647, subd. (f)). We have here a classic instance of parties *in pari delicto,* or equal criminal fault, and in their relationship to one another the law normally leaves the parties in the condition it finds them.

"We think each of the foregoing expressions of law reflects the basic view of society that *self-police provides the primary defense against the*

*evils of intoxication* and outside police plays only a secondary role. A failure of primary policing is not excused or condoned by a failure of secondary policing, and the person with primary responsibility has no recourse for losses against one who is only secondarily responsible. This for the reason put forth by the Supreme Court of Connecticut in *Nolan* v. *Morelli* (1967) 154 Conn. 432 [226 A.2d 383, 387]: 'To recompense in damages an injury to an intoxicated person or his property resulting from his own overindulgence in intoxicating liquor might, quite properly, be felt by the General Assembly to encourage, rather than to discourage, such overindulgence.' " (Italics added.)

During the 1972 regular session of the California Legislature, Assembly Bill No. 1864 was introduced (Assemblyman Ketchum—March 15, 1972). It was in part an attempt to codify the *Vesely* decision (see 5 Pacific L.J. 186, 191) and to extend its purview so as to make any person licensed under the Alcoholic Beverage Control Act civilly liable to the patron where the sale is in violation of Business and Professions Code section 25602 and it is reasonably foreseeable that the consumer will drive a motor vehicle while still under the influence of alcohol. This provision of the bill was deleted by amendment on June 16, 1972, and later the remainder of the bill died in the Senate. The Legislature thus joined the three appellate courts in rejecting an extension of the rule of compensability to the drunken patron.

Such was the status of the law on the subject when in 1975 the Supreme Court decided *Li* v. *Yellow Cab Co.,* 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226]. There the court abolished California common law doctrines which interposed contributory negligence and assumption of risk as total barriers to recovery for negligence. In their place, the court established comparative negligence, which diminishes a negligent plaintiff's recovery in proportion to his own negligence. (*Id.,* at pp. 828-829.) No longer does a complaint fail to state a cause of action because on its face it portrays a contributorily negligent plaintiff. Such a plaintiff is not vulnerable to total ouster from the courts but only to a proportionate reduction of his damage recovery.

The issue now is whether the *Li* case has altered the otherwise judicially and legislatively well-settled law denying a remedy to the injured drunken patron against the tavern owner. Has the plaintiff here stated a cause of action for his damages, to be diminished only in proportion to his own misconduct?

## I

■ We note that the court in *Li* consciously failed to extend the doctrine of comparative negligence to the area of willful misconduct. It stated, "Finally there is the problem of the treatment of willful misconduct under a system of comparative negligence. . . . The thought is that the difference between willful and wanton misconduct and ordinary negligence is one of kind rather than degree in that the former involves conduct of an entirely different order, [fn. omitted] and under this conception *it might well be urged that comparative negligence concepts should have no application when one of the parties has been guilty of willful and wanton misconduct* . . . . [¶] The existence of the foregoing areas of difficulty and uncertainty (as well as others which we have not here mentioned—see generally Schwartz, *supra,* § 21.1, pp. 335-339) has not diminished our conviction that the time for a revision of the means for dealing with contributory fault in this state is long past due and that it lies within the province of this court to initiate the needed change by our decision in this case. Two of the indicated areas (i.e., multiple parties and willful misconduct) are not involved in the cases before us, and we consider it neither necessary nor wise to address ourselves to specific problems of this nature which might be expected to arise. . . ." (Italics added.) (*Id.,* at pp. 825-826.)

■ Two questions present themselves. First, is the drunken patron guilty of willful misconduct rather than negligence? Second, if so, should *Li* be extended to add a comparative willful misconduct doctrine to comparative negligence?

We answer the first question in the affirmative.[1] Nothing is more elementary than that a person normally becomes intoxicated as a result of his own volition. As pointed out in *Cooper, supra,* the drunken patron in reality commits a crime as he sits upon the bar stool. Before imbibing at all, he is fully aware of the debilitating effects of alcohol upon the senses, and of its total effect upon himself. He knows that if he consumes it to excess, his subsequent activities may render him a danger and a menace to himself and others, especially innocent third persons. Yet, despite this prior knowledge, he inexcusably proceeds to consume alcohol in sufficient quantities to bring about the predicted result.[2] This is willful and wanton misconduct as clear as any imaginable.

[1]In juxtaposition to the plaintiff's willful misconduct is the wrongful act of the tavern owner (or his bartender), a violation of a penal statute (Bus. & Prof. Code, § 25602). For purposes of this decision, we deem it to also be willful misconduct.

[2]While the degree of intoxication progresses "imperceptibly" with the continued consumption of alcohol, there is nothing imperceptible or obscure about the drinker's

Let us note parenthetically that we are not here concerned with a minor (cf. *Boyles* v. *Hamilton* (1965) 235 Cal.App.2d 492 [45 Cal.Rptr. 399]), nor with an alcoholic who suffers from an irresistible and pathological urge to drink excessively. Such a person may, in fact, be physically ill and incapable of self-control, thus under certain extremely limited and extraordinary circumstances not guilty of willful misconduct. (Cf. *Tate* v. *Canonica* (1960) 180 Cal.App.2d 898 [5 Cal.Rptr. 28].) Plaintiff pleads no such condition, but boldly, almost defiantly, asserts his drunken state as voluntarily induced. (Evid. Code, §§ 665, 668.) We are concerned with an adult plaintiff who became drunk because he desired and intended that result.

The second question is more thought provoking. Heretofore and prior to *Li,* while contributory negligence was held not to bar a claim based upon willful misconduct, contributory willful misconduct was recognized as a complete bar thereto. (*Cawog* v. *Rothbaum* (1958) 165 Cal.App.2d 577, 591 [331 P.2d 1063]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 688, p. 2974; Rest.2d Torts, § 482.) It does not however follow readily upon the *Li* decision that because we now have comparative negligence we also have comparative willful misconduct. Whether we do or not hinges upon whether a duty of care should be declared to exist in favor of the willful wrongdoer; this in turn requires formulation of public policy. As observed by the *Li* court, the difference between negligence and willful misconduct being one of kind, the comparative negligence concept should arguably not apply to the latter.

A threshold question is whether the obviously intoxicated customer is a member of the class protected by section 25602. According to *Vesely,* the statute was designed to protect "members of the general public from injuries . . . resulting from excessive use of intoxicating liquor." (*Vesely* v. *Sager, supra,* p. 165.) This court stated in *Hitson* v. *Dwyer* (1943) 61 Cal.App.2d 803, 808 [143 P.2d 952], that the statute was not adopted to protect the obviously intoxicated customer. The language of the statute, together with the *Vesely* pronouncement, lead us to disapprove the *Hitson* dictum, as did the Supreme Court. (*Vesely* v. *Sager, supra,* p. 167.) The plaintiff here, as a customer in the defendant's tavern, was one of the members of the general public for whose benefit section 25602 was enacted.

---

preconception of ultimate results as he embarks upon his bacchanal. In fact, limiting our remark to the context of this litigation only, we perceive little conceptual difference between our drunken plaintiff here and the person who injects heroin or LSD into his body.

■ This conclusion does not however ipso facto generate the duty which is essential for civil liability in plaintiff's favor. A criminal prohibition becomes a rule of civil liability only because the courts under common law principles accept it as a controlling standard. (*Alber* v. *Owens* (1967) 66 Cal.2d 790, 798-799 [59 Cal.Rptr. 117, 427 P.2d 781]; *Clinkscales* v. *Carver* (1943) 22 Cal.2d 72, 75 [136 P.2d 777].) As in *Vesely,* the prime question is still whether the defendant owes a duty of care to the injured person, and the existence of a criminal statute punishing the defendant's conduct is but one element in the perception of duty.

The existence of duty requires also a determination of reasonable foreseeability (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36]; *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 739-741 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]), which we have no difficulty finding here. Necessarily, however, the inquiry still does not stop there, for the concept of duty is far more complex. " . . . it should be recognized that 'duty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." (Prosser, Law of Torts (3d ed. 1964) pp. 332-333; *Dillon* v. *Legg, supra,* 68 Cal.2d at p. 734.) In *Raymond* v. *Paradise Unified School Dist.* (1963) 218 Cal.App.2d 1, 8 [31 Cal.Rptr. 847], we summarized the policy considerations underlying the duty of care: "The social utility of the activity out of which the injury arises, compared with the risks involved in its conduct; the kind of person with whom the actor is dealing; the workability of a rule of care, especially in terms of the parties, relative ability to adopt practical means of preventing injury; the relative ability of the parties to bear the financial burden of injury and the availability of means by which the loss may be shifted or spread; the body of statutes and judicial precedents which color the parties' relationship; the prophylactic effect of a rule of liability; . . . and finally, the moral imperatives which judges share with their fellow citizens—such are the factors which play a role in the determination of duty." These factors are subsumed within the categories of (1) administrative, (2) moral, and (3) socio-economic considerations, all of which must be evaluated. (*Amaya* v. *Home Ice, Fuel & Supply Co.* (1963) 59 Cal.2d 295, 310-315 [29 Cal.Rptr. 33, 379 P.2d 513], overruled on other grounds in *Dillon* v. *Legg, supra.*) In substance and in the last analysis, the attribution of a duty to the tavern keeper here must be " 'inspired by natural reason and an innate sense of justice . . . .' " (*Rodriguez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 393 [115 Cal.Rptr. 765, 525 P.2d 669].)

Administrative considerations, while militating against the plaintiff (as they always do), do not cause us to recoil at the prospect of allowing recovery. Indeed, accepting the premise that "Justice . . . exists only when it can be effectively administered" (*Amaya, supra* at p. 310), we are troubled by the efficacy of a decision-making process that would allow the sought-after cause of action. In order for the cause of action to arise, the defendant must violate Business and Professions Code section 25602, that is, sell intoxicating liquor to an "obviously intoxicated person."[3] (*Vesely* v. *Sager, supra* at p. 165.) To be *obviously* intoxicated one must first be *in fact* intoxicated. By the time the tavern owner (or his agent) violates the statute, the patron has already put himself into such a state as to be dangerous to himself and others. If he is then served a single drink, following which he leaves the premises and injures himself, who is to say that the tavern owner's statutory violation by service of the one drink contributed as a proximate cause to the injury? Or if before the injury he visits a few more taverns and consumes one drink at each of them, who is to say which of the drinks at which of the taverns was a proximate cause? The standard response is that it is a question of fact for the jury; and so it is. But the speculation to be indulged in by the fact finder, whether the violation involve a single drink or a dozen, one tavern or five, is considerable.

Disquieting as this may be, the Supreme Court has repeatedly made it clear that such considerations ought not to bring about a wholesale rejection of a right of recovery. (See the discussion in *Dillon* v. *Legg, supra,* pp. 735-739.) They did not prevent the *Vesely* v. *Sager* extension of liability. And even though it causes us to pause for reflection, the administrative factor does not cause us to deny to the drunken patron recovery for his own injuries.

■■ The moral and socio-economic factors however lead us to the conclusion that the requisite duty of the tavern owner to the drunken patron does not exist, that the comparative negligence doctrine of *Li* does not apply to willful misconduct, and that the *Vesely* v. *Sager* rule does not extend to injuries to the drunken patron himself.

The inestimable gift of reason and self-control cries out for preservation in every person, and the duty of its preservation devolves upon each member of the public. When the restraint of reason and the ability to

---

[3]We note that the portion of Business and Professions Code section 25602 which prohibits sale to a "habitual or common drunkard" is not involved in this case.

care for one's self are perverted by a conscious, self-indulgent act of voluntary intoxication which temporarily casts off those powers, no societal or personal wrong, nor violation of public or social policy is accomplished or violated if the actor is alone held answerable for his injury. "[T]he voluntary, independent, uncoerced, uninvited self-indulgence of him who knowing the difference between right and wrong and the injurious effects apt to follow" (*Collier* v. *Stamatis* (1945) 63 Ariz. 285 [162 P.2d 125, 128]) nonetheless consumes alcohol arouses no ready sympathy; and when it is repeated so as to trigger a violation of Business and Professions Code section 25602, it merits no reward.

Governmental paternalism protecting people from their own conscious folly fosters individual irresponsibility and is normally to be discouraged. (Cf. *Duff* v. *Harrah South Shore Corp.* (1975) 52 Cal.App.3d 803, 807 [125 Cal.Rptr. 259].) To go yet another step and allow monetary recovery to one who knowingly becomes intoxicated and thereby injures himself is in our view morally indefensible.

Does this plaintiff's conduct differ conceptually from that of a driver who engages in a speed contest on a crowded city street, attains a speed of 100 miles per hour, loses control of his vehicle, injures himself, and then sues his fellow contestant on a comparative willful misconduct theory? Would we, should we, allow such a driver to recover? Certainly not. Yet, all the arguments in favor of plaintiff here are equally available and applicable there, including the contention that by denying recovery we allow the culpable defendant to escape an accounting for his misdeed. This latter is not necessarily so, for the defendant in either case is subject to criminal prosecution for his misconduct, and such prosecution may be instigated by the injured and indignant speed driver or drunk patron as much as by law enforcement officers (22 C.J.S., Crim. Law, § 300, p. 790). But even if it were so, we are faced with a practical choice of "favoring" the drunk patron and speed contestant on the one hand or the tavern owner and cocontestant on the other.[4] Without conceding a "favor" to any one, the age-old doctrine of *pari delicto* (42 C.J.S. 490) directs us to deny recovery.

Let us dispel the fantasy that application of a comparative fault principle here would not *favor* the patron, rather that it would merely assess to him a proper portion of his loss while at the same time giving

---

[4]See an excellent discussion of our judgment value problem in 20 McGill L.J. 492, 507-509.

equal treatment to the tavern owner. While this is semantically attractive, in reality the allowance of any recovery to an injured drunk plaintiff patron against the tavern owner accrues to the financial benefit of the patron. It is no less a benefit to him, and no less immoral under the principles espoused herein, because the recovery could be greater. Heretofore, no recovery has been allowed such a plaintiff; to now allow it in any degree would be to award a pure and simple financial windfall to an undeserving plaintiff, which no amount of temporal theorizing can change.

How far removed is this from one who voluntarily undertakes with another to engage in an affray (Pen. Code, § 415) or a duel (Pen. Code, § 225) and who thereafter sues his antagonist for an injury caused thereby? Should a comparative assault and battery concept now evolve? Curiously enough, there are jurisdictions which have imposed total, not just comparative, liability upon the antagonist in such cases (see Prosser, Law of Torts (4th ed. 1971) fn. 96, p. 107). Such holdings have by now been thoroughly discredited. (See 4 Witkin, Summary of Cal. Law, *supra*, Torts, § 198, pp. 2484-2485; Prosser, Law of Torts, *supra*, p. 107; Rest.2d Torts, § 60, pp. 92-93.) Prosser puts it in these words: "But the cases have been roundly criticized on the grounds that no one should be rewarded with damages for his own voluntary participation in a wrong, *particularly where*, as is usually the case, *he himself commits a crime;* that the state is fully able to protect itself by a criminal prosecution; and that the parties, if they give any thought to the law at all, which is quite improbable, are quite as likely to be *encouraged by the hope that if they get hurt they can still win in court.* A minority of some eight states, with the support of the Restatement, have held that the consent will defeat the civil action, except where the force used exceeds the consent." (*Idem.*) (Fns. omitted.) (Italics added.) In California, the precise question has not been ruled upon (cf. *Hudson* v. *Craft* (1949) 33 Cal.2d 654 [204 P.2d 1, 7 A.L.R.2d 696]), but in *Sayadoff* v. *Warda* (1954) 125 Cal.App.2d 626 [271 P.2d 140], a closely analogous case, the restatement rule was followed, the court saying (at p. 631): "Admittedly, the court should discourage the violation of the penal statutes of this state, but it is highly doubtful that this end should be sought through the medium of civil litigation. It is also highly doubtful that any deterrent would be afforded by allowing damages in such a case as this. Such holding might well encourage a line of conduct such as we have before us,—the submission to abortions with no complaint if they are successful, but with the assurance of financial reward if the woman participant is injured." We find this *volenti non fit*

*injuria* notion of intentional tort law highly analogous to the case before us. Just as the willful participant in a speed contest should be precluded from proceeding against his cocontestant for injuries incurred in the contest, so should the drunken patron be precluded from proceeding against the tavern owner.

Socio-economic considerations also militate against allowance of a cause of action here. There are over 25,000 licensed on-sale alcohol dispensing businesses throughout the State of California, and there are hundreds of thousands of patrons who use their facilities daily, a large percentage of whom drive automobiles after some consumption of alcohol. The latter are largely responsible for the devastating highway carnage resulting from automobile accidents. Everything reasonably conceivable should be done to discourage such activity; conversely, nothing should be done to encourage it, particularly by the judiciary. A rule of liability here could have no other possible effect upon patrons than to encourage them to excessive liquor consumption at taverns. Forthwith upon the announcement of a rule of law which permits a drunken patron to recover damages for his own injuries from the tavern keeper, patrons who have heretofore felt concern for their own safety should they become overly intoxicated will relax their personal efforts, for three readily apparent reasons. First, because they will assume that the bartenders will exercise greater care in their behalf; second, because they very naturally will feel that if they are hurt they will be compensated for such hurt; and third, because we, the judiciary, will in effect have encouraged their overindulgence, by pampering their delinquency. It cannot be otherwise. The already tragic statistics which so horribly describe the slaughter of innocent persons by drunk drivers will immediately increase, to society's further disadvantage.

There would be no converse prophylactic effect to society in terms of a deterrent to the tavern owner. We are fully aware of the practical difficulty of criminally and administratively policing section 25602 and of how such policing has been ineffective to stem the slaughter on our highways. But it simply does not follow that the creation of a rule of civil liability in favor of the patron would have any salutary effect. All that would occur would be that a rash of lawsuits would be filed by or in behalf of patrons of tavern owners, ranging from the patron who falls off his stool (*Hitson* v. *Dwyer, supra*) to the heirs of the patron who kills himself in his own shower at home, hours after his revelries (to say nothing of the inevitable plaintiff who will claim damages because his

wife divorced him when he came home drunk and beat her). These lawsuits will bring about uniform substantial upward adjustments in liability insurance premiums.[5] Tavern owners will pay the higher premiums and appropriately increase their liquor prices to the public, with absolutely no reasonably foreseeable change in the rate of adherence to the Business and Professions Code section 25602 proscription.

If more efficacious enforcement of section 25602 is to be carried out at public expense, let it be done directly, by such methods as increased emphasis and concentration upon surveillance (including the addition of the necessary manpower) to detect and prosecute violators, and stricter and more financially painful administrative penalties for violators.[6] But to expect undesirable lawsuits by undeserving drunks to serve as the panacea which will accomplish this result is naive and unrealistic.

There are of course other considerations, both favorable and unfavorable to both sides of the issues, which we have not deemed it necessary to minutely detail here (see *Raymond* v. *Paradise Unified School Dist., supra*). We have carefully considered and analyzed them all, and have found the scales tipped heavily against allowance of recovery. Our conclusion is further confirmed by the negative action of the Legislature in refusing to enact proposed legislation which would have brought about an opposite result. (See *Eu* v. *Chacon* (1976) 16 Cal.3d 465, 470 [128 Cal.Rptr. 1, 546 P.2d 289].)

Our principal point of departure from our dissenting brother justice is in his treatment of the plaintiff's act as one of negligence rather than willful misconduct. Indeed, application of the *Li* doctrine compels a right of recovery, *if* the drunken plaintiff is merely negligent. Prior to *Li*, the California appellate cases denying plaintiff recovery (*Cole* v. *Rush* (1955) 45 Cal.2d 345 [289 P.2d 450, 54 A.L.R.2d 1137]; *Carlisle* v. *Kanaywer, supra; Sargent* v. *Goldberg, supra,* etc.) spoke in terms of

---

[5]See footnote 10 of the dissenting opinion.

[6]There were over 27,000 on-sale and over 21,000 off-sale alcoholic beverage licenses issued during 1974 and 1975. The Department of Alcoholic Beverage Control filed only 333 accusations (for violation of § 25602) during 1974 and 249 during 1975 (a number of which were doubtless disposed of without any interruption of business under Bus. & Prof. Code, § 23095). It thus appears that this area needs considerable legislative and executive attention, particularly since "Over 40% of all fatal accidents and 17.6% of all injury accidents [show that] the party causing the accident . . . had been drinking." (1974 Annual Report of Fatal and Injury Motor Vehicle Accidents, California Highway Patrol, p. 57.)

negligence (except for the above quoted portion of *Cooper* v. *National Railroad Passenger Corp., supra*). There was, of course, no need for them to delve deeper into the niceties of distinction between negligence and willful misconduct (or even intentional wrong) as they relate to the patron's conduct. The *Li* case, of course, requires indulgence in such considerations; and having noted the plaintiff's conduct to be willful, our reasoning leads us to the conclusion which we have reached.[7]

## II

There is another reason procedurally why this plaintiff in this case would not be entitled to recover, even if a rule of comparative willful misconduct had been enunciated. The *Li* court gave its comparative negligence doctrine limited retroactivity. In so doing, it stated, "It remains for us to determine the extent to which the rule here announced shall have application to cases other than those which are commenced in the future. It is the rule in this state that determinations of this nature turn upon considerations of fairness and public policy. [Citations.] Upon mature reflection, in view of the very substantial number of cases involving the matter here at issue which are now pending in the trial and appellate courts of this state, and with particular attention to considerations of reliance applicable to individual cases according to the stage of litigation which they have reached, we have concluded that a rule of limited retroactivity should obtain here. Accordingly we hold that the present opinion shall be applicable to all cases in which trial has not begun before the date this decision becomes final in this court, but that it shall not be applicable to any case in which trial began before that date (other than the instant case)—except that if any judgment be reversed on appeal *for other reasons,* this opinion shall be applicable to any retrial." (Italics added.) (*Li* v. *Yellow Cab Co., supra,* at p. 829.)

Defendant's demurrer was sustained in May 1974, and a judgment of dismissal entered September 1974. *Li* v. *Yellow Cab Co.* was filed March 31, 1975. Defendant claims that within the meaning of *Li* and its retroactive application (*id.,* at p. 829), the case was "tried" prior to the finality of *Li.* The contention is correct and thus itself disposes of plaintiff's appeal.

---

[7]In reaching our conclusion, the decisional law of other jurisdictions has been of little assistance. A few states have departed from the traditional common law concept which denies relief to the drunken patron; some have adopted "dram-shop statutes" providing for a right of action for the patron; the majority continue to adhere to the common law concept, for various articulated reasons, and deny the intoxicated patron a right of relief. (54 A.L.R.2d 1152; 64 A.L.R.2d 705; 65 A.L.R.2d 923; 75 A.L.R.2d 833.)

Plaintiff questions whether a "trial" took place where judgment of dismissal was entered after sustaining a demurrer without leave to amend. It did. At the time of the hearing on demurrer, the law applicable to the pleadings under attack had been clearly enunciated in *Cole* v. *Rush, supra, Carlisle* v. *Kanaywer, supra,* and *Sargent* v. *Goldberg, supra;* the ruling on demurrer was therefore correct.

Trial has been variously defined to always include a hearing on demurrer if that proceeding was dispositive of the action. In *O'Day* v. *Superior Court* (1941) 18 Cal.2d 540, 544 [116 Cal.Rptr. 621], the court defined trial as follows, "Generally speaking, a 'trial' includes all rulings of a court in proceedings before it made in furtherance of the decisions made upon the issues in the case which form the basis of the judgment. (*Stow* v. *Superior Court,* 178 Cal. 140 . . . .)" In *Berri* v. *Superior Court* (1955) 43 Cal.2d 856 [279 P.2d 8], the court at page 859 stated, "When the demurrer has been sustained and judgment of dismissal has been entered, *there has been a trial* and the action is not subject to dismissal under section 583. . . . [¶] [I]t has been said generally in defining a trial that it is the determination of an issue of law or fact; a demurrer of course calls for the determination of an issue of law only. (*City of Pasadena* v. *Superior Court,* 212 Cal. 309 [298 P. 968]; *O'Day* v. *Superior Court,* 18 Cal.2d 540 [116 P.2d 621]; *Redington* v. *Cornwell,* 90 Cal. 49 [27 P. 40]; *Tregambo* v. *Comanche M. & M. Co.,* 57 Cal. 501; *Booth* v. *County of Los Angeles,* 69 Cal.App.2d 104 [158 P.2d 401]; . . .*"

Our Supreme Court in *McDonough Power Equipment Co.* v. *Superior Court* (1972) 8 Cal.3d 527, at page 531 [105 Cal.Rptr. 330, 503 P.2d 1338], stated, " . . . in defining 'trial' we have said 'that it is the determination of an issue of law or fact' (*Berri* v. *Superior Court* (1955) 43 Cal.2d 856, 859 [279 P.2d 8]) or 'the examination . . . of the facts or law put in issue in a cause . . . . ' (*Tregambo* v. *Comanche M. and M. Co.* (1881) 57 Cal. 501, 505; see also *Adams* v. *Superior Court* (1959) 52 Cal.2d 867, 870 [345 P.2d 466] and cases there cited; *Carney* v. *Simmonds* (1957) 49 Cal.2d 84, 90 [315 P.2d 305]; *City of Pasadena* v. *Superior Court* (1931) 212 Cal. 309, 313 [298 P. 968]; *Good* v. *State of California, supra,* 273 Cal.App.2d 587, 590-591; *Smith* v. *City of Los Angeles, supra,* 84 Cal.App.2d 297, 301-302 and cases there cited.)"

Consistently with these authorities, we hold that where a plaintiff files a complaint which under existing law states no cause of action, and a general demurrer thereto is sustained without leave to amend, and judgment is entered thereon fully and finally disposing of

the litigation, a "trial" has taken place, the only trial to which plaintiff is entitled. Analytically we perceive no other sense in which the *Li* court could have used the word as it relates to a case where contributory negligence appears on the face of the complaint. In such a context, fully expecting the trial courts to follow binding precedent (*People* v. *Triggs* (1973) 8 Cal.3d 884, 890 [106 Cal.Rptr. 408, 506 P.2d 232]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 664, p. 4578), the Supreme Court could not have contemplated a *full* trial including plaintiff's evidence, defendant's evidence, rebuttal, argument, verdict or intended decision, and finally judgment; for such an all-inclusive trial prior to *Li* would have been impossible, unless conducted by a maverick court refusing to follow precedent. ■ At some point, the trial court would have performed its duty and resolved the litigation adversely to the plaintiff by such procedures, inter alia, as directed verdict (Code Civ. Proc., § 624), nonsuit (Code Civ. Proc., § 581c), judgment under Code of Civil Procedure section 631.8, summary judgment (Code Civ. Proc., § 437c), or judgment on the pleadings (4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 161 et seq., p. 2816). These procedures must necessarily all be deemed to constitute a trial, for the logically inescapable reason that given the law of the instant, plaintiff has by each of them received a full exposition of his entire case before a judicial tribunal, and a disposition accordingly. He receives no less when his complaint fails to state a cause of action and a general demurrer thereto is sustained. ■ In using the phrase "cases in which *trial has not begun* before the date this decision becomes final," the Supreme Court doubtless had in mind the hundreds of pending cases in which the defense of contributory negligence was pleaded, and which were entitled to proceed to trial (evidentiary hearing) in any event; as to these, the comparative negligence concept would or would not apply, depending upon whether "trial has . . . begun." There was no intent to upset legally correct dispositions by demurrer or other similar ruling on the applicable law, long since final as to the trial court, any more than to upset similar results following evidentiary trial. ■ *Li* v. *Yellow Cab Co., supra,* does not apply.

The judgment is affirmed.

**FRIEDMAN, Acting P. J.**—I dissent. The majority, in my view, err on both basic points: (a) in holding that the proceedings on demurrer amounted to a "trial" within the meaning of *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 829 [119 Cal.Rptr. 858, 532 P.2d 1226], and (b) in refusing

to recognize that a retail liquor seller owes his customer a duty of care to refrain from selling drinks to the customer when the latter has reached a stage of obvious intoxication.

I

The immediate history of our problem commences with *Vesely* v. *Sager* (1971) 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151]. There the court considered the impact upon California tort law of Business and Professions Code section 25602. That statute provides: "Every person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage to any habitual or common drunkard or to any obviously intoxicated person is guilty of a misdemeanor."

In *Vesely* the Supreme Court abrogated the common law rule exempting liquor sellers from liability for injuries caused by drunken patrons. It held that a tavern keeper is presumptively negligent when he violates section 25602; held that the seller owes a duty of care to third persons injured by the intoxicated customer. The court expressly abstained from deciding whether the drunken patron could recover for his own injuries. (*Vesely* v. *Sager, supra,* 5 Cal.3d at p. 157; see generally, 5 Pacific L.J. 186 (1974); Keenan, *Liquor Law Liability in California,* 14 Santa Clara Law. 46 (1973); Silberberg, *The Intoxicated Patron—A Reappraisal of the Duty of Care* (1974) 20 McGill L.J. 491.)

Since *Vesely,* three California appellate courts have rejected attempts to extend the rule of compensability to the drunken patron himself. At a time when contributory negligence was a total bar to recovery, two courts held that a complaint exhibited contributory negligence on its face when it alleged intoxication of the plaintiff or plaintiff's decedent, hence was vulnerable to general demurrer. (*Carlisle* v. *Kanaywer* (1972) 24 Cal.App.3d 587, 591-592 [101 Cal.Rptr. 246]; *Sargent* v. *Goldberg* (1972) 25 Cal.App.3d 940, 944 [102 Cal.Rptr. 300].) A third court held the customer barred by his assumption of risk, specifically by his assumption of the risk "that the bartender will· negligently fail to recognize the drinker's obviously intoxicated condition." (*Cooper* v. *National Railroad Passenger Corp.* (1975) 45 Cal.App.3d 389, 393-394 [119 Cal.Rptr. 541].)

These three post-*Vesely* cases were followed by the State Supreme Court's seminal decision in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226]. In *Li* the court abolished California common law doctrines which interposed contributory negligence and assumption of risk as total barriers to recovery for negligence. In their

place the court established the principle of comparative negligence, which diminishes a negligent plaintiff's recovery in proportion to the contributory force of his negligence. (*Id.,* at pp. 828-829.) No longer does a complaint fail to state a cause of action when, on its face, it portrays a contributorily negligent plaintiff. Such a plaintiff is not vulnerable to ouster from the courts but only to proportionate reduction of damages. Thus, if *Li* v. *Yellow Cab Co.* applies here, the three post-*Vesely* decisions, ousting drunken plaintiffs under now-discarded contributory negligence and assumption of risk rules, have lost their precedential force.

## II

In *Li* v. *Yellow Cab Co., supra,* the Supreme Court accorded limited retroactivity to the new comparative negligence doctrine, confining it to cases in which "trial" began after the date the *Li* opinion became final. In the present case the defendants' general demurrer was sustained without leave to amend in August 1974 and a judgment of dismissal entered in September 1974, approximately seven months before the *Li* decision. This case was pending on appeal at the time of the *Li* decision. The majority opinion argues that the proceedings on demurrer amounted to a "trial," citing such decisions as *McDonough Power Equipment Co.* v. *Superior Court* (1972) 8 Cal.3d 527, 531-532 [105 Cal.Rptr. 330, 503 P.2d 1338].

The word "trial" may be used broadly, as in *McDonough,* to describe any procedure for reaching a decision on the merits, or narrowly, as denoting the contest and decision on factual issues. (*Superior Oil Co.* v. *Superior Court* (1936) 6 Cal.2d 113, 116 [56 P.2d 950].) Whether a hearing on demurrer constitutes a trial depends upon the individualized purpose of the declaration in which the word appears. (4 Witkin, Cal. Procedure, Trial, § 2, p. 2862.)

A series of misjudgments leads the majority to its erroneous appraisal of the *Li* declaration of partial retroactivity. First, the *Li* opinion was ambiguous at this point. Second, the majority of this court attempt to resolve the ambiguity by resort to abstract definitions from other sources without regard to the individualized purpose of the *Li* declaration. Third, the majority quote but ignore the only statement of the *Li* opinion supplying a clue to the Supreme Court's intention. That statement reads (13 Cal.3d at p. 829): "Upon mature reflection, in view of the very substantial number of cases involving the matter here at issue which are

now pending in the trial and appellate courts of this state, and with particular attention to considerations of reliance applicable to individual cases according to the stage of litigation which they have reached, we have concluded that a rule of limited retroactivity should obtain here. Accordingly we hold that the present opinion shall be applicable to all cases in which trial has not begun before the date this decision becomes final . . . ."

Only rarely can the contributory negligence issue be decided on demurrer; usually the issue must await the trial of fact and the verdict of the jury. Thus, the "stage of litigation" which disposes of the contributory negligence issue is the jury trial, not the preliminary, easily reparable jousting on the pleadings. The "considerations of reliance" mentioned in *Li* revolve around the assemblage of evidence and its presentation to the jury under instructions shaped by then current legal doctrines. Of course, only the Supreme Court holds the key to its own cryptic utterance. Construing that utterance in context, I believe that the court confined the word "trial" to the trial of fact.

III

Next, we arrive at the principal question, the question left unanswered in *Vesely*—is the tavern keeper civilly liable to the customer who was served drinks while obviously intoxicated?

*Vesely* considered the seller's liability to a third person injured by the drunken customer; it found a duty of care running from the seller to the third person. The post-*Vesely* Court of Appeal decisions—*Carlisle, Sargent* and *Cooper*—asserted a bar arising from the plaintiff's conduct, a bar which has now been removed by *Li* v. *Yellow Cab Co.* Aside from *obiter dicta,* none of the post-*Vesely* decisions inquired into the existence of a duty of care owed by seller to customer. The question is thus at large. The majority correctly conclude that section 25602 is designed to protect the intoxicated customer along with other members of the public. Thus, I join in the majority's disapproval of the dictum in *Hitson* v. *Dwyer* (1943) 61 Cal.App.2d 803, 807-808 [143 P.2d 952]. As a criminal licensing regulation, section 25602 does not stay its hand until the drunken customer injures a third party. It is violated when the bartender sees an obviously intoxicated customer and sells him drinks. The statute is designed to guard the customer's as well as the third party's safety.

A statute prohibiting the defendant's conduct does not ipso facto generate a rule of civil liability. A criminal prohibition becomes a rule of civil liability only because the courts under common law principles accept it as a controlling standard. (*Alber* v. *Owens* (1967) 66 Cal.2d 790, 798-799 [59 Cal.Rptr. 117, 427 P.2d 781]; *Clinkscales* v. *Carver* (1943) 22 Cal.2d 72, 75 [136 P.2d 777].) As in *Vesely*, the prime question is whether the defendant owes a duty of care to the injured person. The existence of a criminal statute punishing the defendant's conduct is but one element in the perception of a duty.

My colleagues of the majority indulge in a subjective and idiosyncratic approach to the duty problem. First they place the concededly intoxicated plaintiff on their personal moral scales, find him wanting and pronounce him guilty of willful misconduct on the face of the pleadings and as a matter of law. Having pushed him beyond the pale of judicial solicitude, they indulge in a seeming rationalization which culminates in the negation of duty. Evolution of the comparative fault doctrine has not reached the point where a plaintiff, guilty of willful misconduct, may recover part of his loss from a merely negligent defendant. (*Li* v. *Yellow Cab Co., supra,* 13 Cal.3d at pp. 825-826.) Once the majority find the patron guilty of willful misconduct, their duty rationalization is a superfluity. In terms of result, the majority punish the drunken customer and reward the law-breaking liquor seller by immunizing the latter from sharing in the loss. Disavowing judicial paternalism, they explicitly withhold it from the customer and silently extend it to the tavern keeper. The result is hardly an example of even-handed justice. In terms of social utility, it represents utter disadvantage.

The majority approach rests on a usurpation of the jury function. When a lawsuit turns on willful misconduct, its occurrence is essentially a question of fact, that is, an issue for the jury and not for the court. (*Reuther* v. *Viall* (1965) 62 Cal.2d 470, 475 [42 Cal.Rptr. 456, 398 P.2d 792].) Intoxication is but one of the factors a jury should consider in determining the issue of willful misconduct. (*Sholar* v. *Barker* (1962) 211 Cal.App.2d 31, 34 [27 Cal.Rptr. 451]; *Fuller* v. *Chambers* (1959) 169 Cal.App.2d 602, 605 [337 P.2d 848].) The majority cite not one decision for their *ex cathedra, ex arbitrio* pronouncement fastening the drunken plaintiff with willful misconduct *ex proprio vigore* and per se.

The error of the majority's willful misconduct assumption is underscored by decisions which refuse to find an intoxicated plaintiff contribu-

torily negligent as a matter of law. (*Emery* v. *Los Angeles Ry. Corp.* (1943) 61 Cal.App.2d 455, 461 [143 P.2d 112]; *Robinson* v. *Pioche, Bayerque & Co.* (1855) 5 Cal. 460, 461; 65A C.J.S., Negligence, § 143, p. 174; 17 A.L.R.2d 1085, 1105-1108.)

## IV

The comparative fault doctrine of *Li* v. *Yellow Cab Co.* effectively rearranges the pro and con factors affecting the formulation of a duty of care. The prospect of split liability or shared loss plays a profound and powerful role in the duty analysis.

According to current California negligence doctrine, reasonable foreseeability of harm is the initial, court-determined test of a duty of care; secondarily, a series of policy factors moves the courts to decide, as a matter of law, whether to accord protection to the particular plaintiff. (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36]; *Rodriguez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 399 [115 Cal.Rptr. 765, 525 P.2d 669]; *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 739-741 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].)

In *Raymond* v. *Paradise Unified School Dist.* (1963) 218 Cal.App.2d 1, 8 [31 Cal.Rptr. 847], this court sought to capsulize the array of policy considerations underlying the duty of care issue: "The social utility of the activity out of which the injury arises, compared with the risks involved in its conduct; the kind of person with whom the actor is dealing; the workability of a rule of care, especially in terms of the parties' relative ability to adopt practical means of preventing injury; the relative ability of the parties to bear the financial burden of injury and the availability of means by which the loss may be shifted or spread; the body of statutes and judicial precedents which color the parties' relationship; the prophylactic effect of a rule of liability; in the case of a public agency defendant, the extent of its powers, the role imposed upon it by law and the limitations imposed upon it by budget; and finally, the moral imperatives which judges share with their fellow citizens—such are the factors which play a role in the determination of duty." The duty factors have been grouped into moral, administrative and socio-economic categories. (*Amaya* v. *Home Ice, Fuel & Supply Co.* (1963) 59 Cal.2d 295, 309-315 [29 Cal.Rptr. 33, 379 P.2d 513], overruled on other grounds in *Dillon* v. *Legg, supra;* see generally, Green, *The Duty Problem in Negligence Cases* (1928) 28 Colum.L.Rev. 1014, (1929) 29 Colum.L.Rev. 255.)

Accidental injury is a reasonably foreseeable result of the sale of drinks to one who is already obviously intoxicated. At least, we apprehend that a jury would probably find reasonable foreseeability.[1]

In a compensation system based upon fault, the moral blame attached to the parties' conduct is thrown into the balance. (*Amaya* v. *Home Ice, Fuel & Supply Co., supra,* 59 Cal.2d at p. 315; see Bauer, *The Degree of Moral Fault as Affecting Defendant's Liability* (1933) 81 U.Pa.L.Rev. 586). The now-discarded contributory negligence defense did not "rest upon the idea that the defendant [was] relieved of any duty toward the plaintiff." (Prosser on Torts (4th ed.) p. 417.) In the preliminary duty-of-care inquiry, the court could at that time focus upon the defendant's moral responsibility. If the plaintiff too bore responsibility, the jury would likely deny recovery. Thus the plaintiff's moral blame had little significance in the court's investigation of the defendant's duty. The court could examine the defendant's responsibility for the safety of others with little regard for the plaintiff's responsibility for the safety of self.

In cases like this—where a finding of the plaintiff's negligence is a frequent or expected eventuality—the comparative negligence doctrine now permits the jury to reduce the plaintiff's recovery in proportion to his responsibility. The prospect of a plaintiff's recovery for his intoxication-caused injuries encounters expectable judicial-moral resistance. Some of the decisions conceal moral disapproval of the drunken plaintiff behind a veil of legal doctrine.[2] In the past, when contributory

---

[1]An inquiry into duty of care frequently poses questions paralleling those ultimately presented to the jury. (2 Harper & James, Law of Torts, § 18.8, pp. 1059-1061.) In *Wright* v. *Arcade School Dist.* (1964) 230 Cal.App.2d 272, 277 [40 Cal.Rptr. 812], we suggested that foreseeability, even as a duty factor, was a question of fact, i.e., one for decision by the jury. The suggestion was based on a passage in *Richards* v. *Stanley* (1954) 43 Cal.2d 60, 66 [271 P.2d 23]. This phase of the *Wright* opinion was recently cited with approval in *Weirum* v. *RKO General, Inc., supra,* 15 Cal.3d at page 46. Nevertheless, other Supreme Court decisions have made it apparent that foreseeability, as a duty factor, is a question for court, not jury, determination. (*Dillon* v. *Legg, supra,* 68 Cal.2d at p. 741; *Amaya* v. *Home Ice, Fuel & Supply Co., supra,* 59 Cal.2d at p. 308.) Synthesis of these viewpoints lies in recognition that the court makes a preliminary determination of foreseeability for the purpose of the duty inquiry, for example, on demurrer. In the trial stage, foreseeability becomes a jury question as an ingredient in the ultimate determination of negligence.

[2]My colleagues of the majority dispense with the veil. I respectfully suggest that they misapprehend the moral factor in duty analysis. That factor is not compounded of subjective scorn or praise. The judges should reduce personal coloration to an irreducible minimum. Liability for fault does not bend with the visceral leanings of appellate judges; it interweaves with the generally held ethical expectations of western civilization.

negligence supplied a complete defense, appellate judges could privately satisfy their moral predilections by publicly charging the drunken plaintiff with contributory negligence "as a matter of law." The comparative negligence rule now blocks this juridical escape route. To deliver the drunken plaintiff from responsibility for his own safety must be squarely faced as a duty-of-care factor.

In view of the majority's subjective moral expressions, we may as well lay bare what most opinion writers conceal beneath a cloak of "reasoning" and "rules." A moving force in the evaluation processes of the substantive common law is the court's "innate sense of justice."[3] In assessing moral blame as a duty factor, the courts are really "giving attention to that which is no real part of the law." (Bauer, *op. cit. supra*, 81 U.Pa.L.Rev. at p. 586.) Recognition of responsibility norms as the substructure of negligence liability entails identification of those norms. The generally held ethical imperatives of Western civilization are characterized by the opposition between two forces, egoism and altruism, care for self and care for others. The tension between these forces is resolved by the credo: "Do unto others as you would they would do unto you." Although uttered in a religious context, this credo appeals to religionists and humanists alike.[4] Transported into tort law, it finds expression in a normative concept of duty which addresses simultaneous and equally forceful demands to the parties: (1) that each assume responsibility for his own safety, and (2) that each assume responsibility for the safety of others. (See Rest.2d Torts, § 463, com. b.)

Real life situations frequently forestall simultaneous fulfillment of these dual aims. Compromise and partial fulfillment are frequently in order. The comparative negligence doctrine places the moral forces in approximate equilibrium by abrogating the traditional rule of contributory negligence, which penalized the guilty plaintiff and immunized the guilty defendant.[5] Comparative negligence recognizes that the plaintiff may be irresponsible; that this irresponsibility will not allow the

[3] *Rodriguez* v. *Bethlehem Steel Corp., supra*, 12 Cal.3d at p. 393. The role of "justice" or "morality" in the evolution of decisional law was initially described in Justice Cardozo's seminal Nature of the Judicial Process (1921). One noted commentator on the appellate process describes it as "situation-sense." (Llewellyn, The Common Law Tradition: Deciding Appeals (1960) pp. 59-61.) See also, Ames, *Law and Morals*, reprinted in Jurisprudence in Action (1953) page 1.

[4] See ethics, altruism, egoism, utilitarianism (Encyclopedia Britannica (1972)).

[5] Thus the *Li* v. *Yellow Cab Co.* opinion describes the "inequitable" operation of the former contributory negligence defense, which "fails to distribute responsibility in proportion to fault" and "remains irresistible to all reason and all intelligent notions of

irresponsible defendant to get off scot-free. As in any comparative fault situation, approximate equilibrium is attainable here by forcing the irresponsible plaintiff and the law-breaking defendant to share the former's loss. Each loses and neither wins.

The equilibrium is shattered by a duty formulation which excoriates the plaintiff for lack of self-responsibility, insulates the defendant from responsibility for others and turns in disgust from the whole messy business. To assign the plaintiff's culpability as a reason for rejecting the defendant's duty obstructs the new concept of shared responsibility. When both parties bear moral blame, negation of a duty of care toward the culpable plaintiff only exonerates the culpable defendant.

## V

The intoxicated plaintiff's ability to limit his own consumption does not necessarily exclude him as the beneficiary of a duty of care. The comparative negligence doctrine described in *Li* v. *Yellow Cab Co.* envisions negligent plaintiffs who may recover a share of their loss. A plaintiff's ability to guard his own safety does not foreclose imposition of a duty upon the defendant. If it did, there would be no occasion for the comparative negligence rule.

The customer may be an occasional or recreational drinker with initial control over his own consumption, a problem drinker with impaired control or a compulsive drinker with no control. His ability to prevent injury by limiting his drinking should not be obscured by assigning his plight to the "disease" of alcoholism.[6] Only when he reaches the stage of visible intoxication does the defendant's continued sale of drinks offend the statutory prohibition. (See *infra.*) Whatever his original ability to control his drinking, the bar patron who has reached that stage has sharply diminished ability to prevent harm.

---

fairness" (13 Cal.3d at pp. 810-811.) It states that "fundamental justice" counsels against retention of the old doctrine (*id.*, at pp. 812-813.) Frank expressions of this sort bespeak the moral underpinnings of the new doctrine.

[6]This case does not involve that part of section 25602 prohibiting liquor sale to an "habitual or common drunkard" but only the prohibition against sale to an obviously intoxicated person. The inquiry does not entail entry into the ongoing debate aroused by proposals to dilute the legal responsibility of alcoholics by classifying alcoholism as a disease. In *Powell* v. *Texas* (1968) 392 U.S. 514 [20 L.Ed.2d 1254, 88 S.Ct. 2145], only a minority of the federal Supreme Court recognized alcoholism as a disease. (See *Jacobs* v. *California Unemployment Ins. Appeals Bd.* (1972) 25 Cal.App.3d 1035 [102 Cal.Rptr. 364].) In a negligence action against the tavern keeper, there should be no implication that proof of the plaintiff's alcoholism bars a finding of contributory negligence. At this juncture, we evaluate the plaintiff's ability to prevent injury only as a duty factor, not as a means of measuring his fault.

Balanced against the intoxicated customer's blameworthiness is the moral blame attaching to the tavern keeper or his employee. The liquor business is "attended with danger to the community," thus subject to close regulation by the state. (*Crowley* v. *Christensen* (1890) 137 U.S. 86, 91 [34 L.Ed. 620, 623-624, 11 S.Ct. 13]; *Sandelin* v. *Collins* (1934) 1 Cal.2d 147, 153 [33 P.2d 1009, 93 A.L.R. 956].) The Alcoholic Beverage Control Act declares a purpose to protect the welfare and safety of the people of the state; declares also, that its provisions involve *in the highest degree* the people's economic, social and moral well-being and safety. (Bus. & Prof. Code, § 23001.)

In section 25602 the Legislature indulges in its own normative judgment, expressing disapproval of the liquor retailer who profits by selling drinks to his obviously intoxicated customer. The syndrome is all too familiar—the customer staggers from the tavern, endangering himself and threatening the safety of others. Startling statistics demonstrate the potential of tragedy posed by the drinker who drives his automobile from the tavern, weaving toward his next destination.[7] Viewed as a duty-of-care factor, the prohibitory statute expresses the obverse of the responsibility ethic—responsibility for the safety of others. Denying recovery to the irresponsible customer shields the irresponsible liquor seller. Unless one cares to indulge in the sterilities of comparative disapprobation, the moral pros and cons are at a dead heat.

The administrative facet of the duty inquiry denotes several kindred elements—the need to place relational boundaries on extensions of tort liability and the effectiveness of fact-finding tribunals in deciding cases of the kind at hand. (*Amaya* v. *Home Ice, Fuel & Supply Co.*, *supra*, 59 Cal.2d at pp. 310-313.) As the *Palsgraf* decision[8] teaches, foreseeability is itself an inhibition on the spread of liability. Yet there are foreseeable risks for which the law, apprehensive of undue extensions, permits no recovery. (See, for example, *Adams* v. *Southern Pac. Transportation Co.* (1975) 50 Cal.App.3d 37 [123 Cal.Rptr. 216].) In this case the extension problem is simple. In *Vesely* v. *Sager*, *supra*, the court extended the duty of care to a victim of the statutory violation. Here there is privity between the tavern keeper and the future plaintiff, a direct physical and economic nexus between the defendant's injury-producing conduct and the plaintiff's injury-producing intoxication.

---

[7] A recent California statistical compilation declares: "Over 40% of all fatal accidents and 17.6% of all injury accidents showed the party causing the accident . . . had been drinking." (1974 Annual Report of Fatal and Injury Motor Vehicle Accidents, California Highway Patrol, p. 57.)

[8] *Palsgraf* v. *Long Island R. Co.* (1928) 248 N.Y. 339 [162 N.E. 99, 59 A.L.R. 1253].

The problems of courtroom proof and jury efficacy may be scrutinized simultaneously with the socio-economic phase of the duty congeries—the workability of a rule of care, especially in the terms of the parties' relative ability to adopt practical means of preventing injury. The proposed standard of care is that supplied by Business and Professions Code section 25602. The statute's appropriateness as a standard of care, the kind of proof aimed to show compliance or breach, the jury's efficacy in finding compliance or breach—these can be measured only by examining the statute as a practicably expedient rule of conduct.

## VI

The statutory phrase *obviously intoxicated* assumes pivotal significance to the liquor seller who seeks to comply with the law. A drinker passes by somewhat imperceptible degrees from sobriety to mild tipsiness to recognizable inebriety. Short of blatant displays, diagnosis through visual observation is difficult and uncertain. The drinking establishment may be crowded, its employees too busy to scrutinize individual customers. Refusal of service early in the patron's revels poses a delicate problem of customer relations.

*Vesely* v. *Sager* establishes a rule of liability for negligence or fault, not a rule of strict liability or status liability. Three decades ago section 25602 was so construed as to make it a practicably expedient standard of conduct on the part of a liquor dispenser who wishes to comply with the law. It does not require the seller to test his customer's sobriety or to check his progress from sobriety to inebriety. The statute is aroused only when the customer is obviously, that is, visibly or manifestly, intoxicated; if the customer is visibly or manifestly intoxicated and the seller continues to serve him, the seller has violated the law, either because he failed to observe what was easily seen by others or because, having observed, he ignored that which was apparent. (*People* v. *Johnson* (1947) 81 Cal.App.2d Supp. 973, 975-976 [185 P.2d 105]; see also *People* v. *Smith* (1949) 94 Cal.App.2d Supp. 975 [210 P.2d 98].)

Thus, for the past three decades, section 25602 has stood as a practicable rule of conduct for law-abiding liquor retailers. Applied in jury instructions conforming to its long-established interpretation, section 25602 does not make the liquor seller an insurer of his patrons' sobriety or safety; neither does it demand extraordinary vigilance. Workable as a criminal and regulatory measure, it is also workable as a civil rule of care.

A false issue is created by postulating jury inability to decide which drink pushed the customer "over the line" of obvious intoxication. The bar patron's faculties may be substantially impaired well in advance of that state. He may injure himself or another in a preliminary condition of alcohol-induced impairment short of visible intoxication. Under those circumstances no comparison of each party's ability to prevent harm is needed because section 25602 is not yet activated. When the customer has in fact reached the stage of obvious intoxication, as found by a jury, he has diminished ability to exercise self-protective care.

When section 25602, as interpreted in *People* v. *Johnson,* is scrutinized as a presumptive rule of care, the factors of proof, of jury instructions and jury capability are manageable and clear-cut. Juries are frequently called upon to determine a party's state of sobriety, particularly in "driving under the influence" cases. (Veh. Code, §§ 23101, 23102.) In a civil damage trial the courtroom problems are no more difficult and the decisional questions no less explicit. In sum, the "workability" factors gravitate toward a declaration of duty.

## VII

The social utility ("prophylactic effect") of potential liability is a factor in the duty-of-care discernment. In California approximately 11,000 licensed establishments dispense hard liquor for consumption on the premises; a similar number sell hard liquor by the bottle; over 14,000 retail on-sale and off-sale licensees are located in Los Angeles County alone.[9] Available law enforcement and Alcoholic Beverage Control personnel can supply only sporadic policing at best.[10] Sustained, effective control of these myriad establishments through criminal and licensing sanctions is virtually impossible. An absentee tavern keeper may reap profit from his bartender's chronic disregard of the statute, shielding himself from criminal liability by claims of ignorance and nonparticipation. As a criminal and licensing sanction, section 25602 is ineffectual to stem the tide of drink-caused traffic carnage. In a civil damage action the tavern operator's responsibility for the bartender's breach would stimulate the operator to energetic policing of his own

---

[9]California Department of Alcoholic Beverage Control, Alcoholic Beverage Licenses as of April 1, 1975.

[10]Department of Alcoholic Beverage Control records, of which we take judicial notice, reveal the filing of 333 accusations for violation of section 25602 during the calendar year 1974 and 249 during 1975. These figures create the inference that inspection personnel and facilities are not able to cope with the probable rate of violation.

establishment. Damage eligibility, extended to all within the protective scope of section 25602, would supply a silent, steadfast deterrent to the statute's violation.

Beyond any doubt, the duty of care advocated by this dissenting opinion would have a profound and sobering effect upon California bars and taverns. It would diminish the carefree flow of drinks to drunken patrons, compel dispensers to refuse them service and dry up illicit revenues in those establishments which habitually ignore the law. The prime policy issue lies in a choice between a relatively free-wheeling liquor trade and a reduction in the rate of alcohol-induced injuries and deaths. The social utility of a duty of care strongly urges the duty's affirmation.

As to the parties' relative ability to bear the financial burden of injury and the availability of means to shift or spread the loss, the problem bears the general features of enterprise negligence liability as these are shaped by the new rule of comparative negligence. Ongoing experience in this area of liability would provide a basis for computing liability insurance premiums as one of the expenses of the retail liquor trade. Because of the frequency of contributory negligence, recovery and settlement averages would be low in comparison to other varieties of enterprise damage payments.[11]

## VIII

The coloration lent by the body of American decisional law is diluted by a number of state "dramshop acts" fixing the character and extent of

[11]Recent newspaper accounts declare that liability insurance carriers are imposing vastly increased premium rates on California tavern owners as a consequence of the third-party claims emanating from *Vesely* v. *Sager*. The same accounts reveal fears that some tavern owners may be forced out of business; alternatively, that the price of drinks must be raised. Liability to injured customers as well as third persons would add to the reported economic burden. If the reported premium increases are based upon actual loss experience, that fact reveals widespread and lamentable violations of section 25602. If the increases are not based upon loss experience, they are indicative of a need for inquiry into the rate-fixing practices of the insurance industry. The past years have witnessed the expansion and extension of tort liability doctrines without corresponding attention to the reparations system. Commerce and industry have experienced increased liability insurance costs, which are ultimately borne by the consuming public. As the current medical malpractice predicament illustrates, insurance cost increases, justified or unjustified, ultimately result in politico-economic pressures which arouse legislative attention. The rate-fixing practices of the insurance industry, not ongoing social need, finally generate some legislative renovations. Judicial development of new or extended liability doctrines thus triggers forces far beyond judicial control. The courts must fit decisional law to changing times as best they may, leaving the executive and legislative branches to protect the business community and the public against unwarranted financial burdens.

the liquor seller's civil liability. (See Annots. 64 A.L.R.2d 705, 65 A.L.R.2d 923.) The *Vesely* opinion (5 Cal.3d at pp. 161-162) lists a number of jurisdictions which, by decisional development, have nullified the common law rule of nonliability to third-party plaintiffs. A few states have manifested a disposition to adhere to the common law rule in its entirety. (See 54 A.L.R.2d 1152.) Other courts have recognized a statute or administrative regulation prohibiting liquor sales to a "visibly intoxicated" person as the source of a duty which makes the tavern keeper civilly liable to the injured patron himself. (*Galvin* v. *Jennings* (3d Cir. 1961) 289 F.2d 15 (applying New Jersey law); *Ramsey* v. *Anctil* (1965) 106 N.H. 375 [211 A.2d 900]; *Soronen* v. *Olde Milford Inn, Inc.* (1966) 46 N.J. 582 [218 A.2d 630]; *Majors* v. *Brodhead Hotel* (1965) 416 Pa. 265 [205 A.2d 873]; see also, *Vance* v. *United States* (D. Alaska, 1973) 355 F.Supp. 756 (based upon Alaska statute).

A collateral problem should be attacked. Among the states recognizing the liquor seller's common law liability to the visibly intoxicated patron, two, New Jersey and Pennsylvania, hold that contributory negligence is not a defense.[12] In those states the liquor seller bears the entire loss caused by his violation of the liquor sales restriction; the customer bears none. These decisions are grounded upon a rule withholding the defense of contributory negligence where the defendant's negligence consists of violation of a statute adopted to protect a class of persons against their own inability to protect themselves. A parallel rule has been followed in a California child labor case. (*Boyles* v. *Hamilton* (1965) 235 Cal.App.2d 492, 496-498 [45 Cal.Rptr. 399]; see Rest.2d Torts, § 483, com. c.)

Whether contributory negligence is available to defeat or diminish recovery for a statutory violation depends upon the statute's purpose. If the statute is designed merely to establish a standard of ordinary care for the plaintiff's protection against a risk, the plaintiff's contributory negligence may be asserted; if the statute is designed to protect persons in a state of personal helplessness, it may not. (*Alber* v. *Owens, supra*, 66 Cal.2d at pp. 797-798; *Boyles* v. *Hamilton, supra*, 235 Cal.App.2d at pp. 496-497; 4 Witkin, Summary of Cal. Law, Torts, § 687, pp. 2973-2974; Prosser on Torts (4th ed.) pp. 425-426; see *Haft* v. *Lone Palm Hotel* (1970) 3 Cal.3d 756, 770, fn. 14 [91 Cal.Rptr. 745, 478 P.2d 465].) Child labor laws exemplify the latter kind of statute. (*Boyles* v. *Hamilton, supra*.)

---

[12]*Soronen* v. *Olde Milford Inn, Inc., supra*, 218 A.2d at pp. 634-636; *Majors* v. *Brodhead Hotel, supra*, 205 A.2d at p. 876. A third state, New Hampshire, holds a tavern keeper liable but permits him to assert the intoxicated customer's contributory negligence as a defense. (*Ramsey* v. *Anctil, supra*, 211 A.2d at pp. 901-902.)

Exclusion of the contributory negligence defense is not compatible with the analysis culminating in an affirmation of duty. It profoundly disturbs the array of policy factors. Here, their analysis has been significantly influenced by the new California comparative negligence doctrine. That doctrine permits liquor buyer and liquor seller to bear damages proportioned to the share of fault imputed to each by the jury. The proportioned damage rule here serves two policy objectives, each supporting an affirmation of duty. Consistently with the principle that every person should pay reasonable regard to his own safety,[13] it permits the jury to impose part of the loss on the intoxicated customer. Simultaneously, it provides a practical deterrent to the seller's violation of the Alcoholic Beverage Control Act. The division of damages establishes an equilibrium of responsibility. To exempt the customer from a share of the loss destroys the equilibrium of responsibility.

The rule which removes the contributory negligence defense from certain statutory violation cases was born in an environment which featured contributory negligence as a complete defense. The new comparative negligence doctrine may ultimately demand its reexamination. A presumption of negligence plus unavailability of contributory negligence would accomplish the virtual equivalent of strict or status liability. (See *Mula* v. *Meyer* (1955) 132 Cal.App.2d 279, 284 [282 P.2d 107].) The tavern keeper's negligence, fault, was the gravamen of *Vesely* v. *Sager*. Here we need do no more than enlarge the area of duty which *Vesely* recognized as the springboard of negligence liability.

The plaintiff's immunization from contributory negligence is not necessary to achieve the objective of Business and Professions Code section 25602. The liquor customer usually commences his progress toward injury in a state of sobriety. In the trial of the case the plaintiff's attorney seeks to prove the defendant's violation of duty by portraying his client's drift into the statutory condition of obvious intoxication. The more effective his portrayal, the greater his client's exposure to a finding of contributory negligence. It is difficult to imagine a case in which the jury would not be able to draw an inference of contributory negligence from the plaintiff's getting drunk, regardless of his conduct after he became drunk. In the early stage of his progression toward obvious intoxication, the plaintiff is not bereft of the ability to exercise self-protective care. At that stage he is outside the statute's protective

---

[13]Restatement Second, Torts, section 463, comment b; 4 Witkin, Summary of California Law, Torts, section 684, page 2969.

scope. Thus the statute does not call for the exclusion of contributory negligence.

In my view, the analysis and balance of policy factors calls for an affirmative declaration of the defendants' duty of care. I would reverse the judgment and direct the trial court to overrule the general demurrer of defendants Kauffman.

A petition for a rehearing was denied May 17, 1976, and appellant's petition for a hearing by the Supreme Court was denied June 24, 1976.