Trotta's Adm'r v. Johnson, Briggs & Pitts.

Case 103.—ACTION BY ANTONIO TROTTA'S ADMINISTRA-
TOR AGAINST JOHNSON BRIGGS, & PITTS FOR DAM-
AGES FOR CAUSING DEATH OF PLAINTIFF'S INTES-
TATE.—January 31.

## Trotta's Adm'r v. Johnson, Briggs & Pitts.

Appeal from Pike Circuit Court.

A. J. KIRK Circuit Judge.

From a judgment overruling a demurrer to an
amended answer, plaintiff appeals. Reversed.

Actions—Causing Death—Foreign Laborer—Administrator—Juris-
diction to Appoint—The court will take notice that the
governments of the United States and Italy are at peace,
and where an unnaturalized Italian who was employed in
this State as a laborer lost his life by the alleged negligence
of his employer, though he had no estate and no relatives
in this State, the county court of the county in which he
resided had jurisdiction to appoint an administrator, who
was authorized to bring an action against the employer
for damages for his death.

ROSCOE VANOVER and BENNETT H. YOUNG for appellant.

1. The sole question in this record is, can the administrator
of an alien sue for damages for an injury resulting in his death?

2. It is the contention of appellant that our statute is pri-
marily a protection to the life of a working man in the State of
Kentucky, without regard to the residence of his wife children,
or the residence of his next of kin.

### AUTHORITIES CITED.

Cleveland, C., C. & St. L. Ry. Co. v. Osgood, 70 N. E., 839;
Mullhall v. Fallon, 176 Mass., 266 (vol. 54 L. R. A., 934);
Kellyville Coal Co. v. Petraytis, 195 Ill., 215 (63 N. E., 94); Con-
stitutional Debates, vol. 4, pp. 4715 to 4720; L. & C. Mining Co.
v. Huffman, 99 Ky., 404; O. & N. R. R. Co. v. Barclay, 102 Ky.,

16; Brannigan v. Union Gold Mining Co., 93 Fed., 164; Am. & Eng. Ency., vol. 11, p. 66; Lem Moonsing v. U. S., 158, U. S. R., 547; Brouthon v. Phoenix Light & Fuel Co., L. R. A., vol. 61, p. 563; Deni v. Penn. R. R. Co., 181 Pa. St., 525; Knight v. West Jersey R. R. Co., 108 Pa. St., 250; Brown's Adm'r v. L. & N. R. R. Co., 17 Ky. Law Rep., 145 (97 Ky., 231); Yearkes Heirs v. Yearkes Heirs, 4 Met., 33.

CABELL & CABELL and YORK & YORK for appellee.

1. Has a non-resident alien a right to sue through an administrator for loss of life caused by negligence?

The answer will, of course, depend upon the construction to be placed upon sec. 6, Ky. Stats. If not found there, the right to sue does not exist, as the action did not survive at common law.

2. This action can not be maintained only upon the idea that the general terms of sec. 6, Ky. Stats., includes all nations, and to adopt, that construction would abrogate the cardinal rule that statutes have no extra territorial force.

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

Appellees were contractors engaged in building a section of a railroad in Pike county, this State. Antonia Trotta, an unnaturalized Italian, was employed on the work by appellees as a laborer. He lost his life by an accident, which is charged by his administrator in this suit to have been by the negligence of appellees. An amended answer pleaded that Antonia Trotta was an alien, and had no estate at his death in this State, and no relatives residing here or in any of the States of the Union. It was asserted that therefore the Pike County Court had no jurisdiction to appoint appellant as his administrator, and that consequently appellant could not prosecute this action. This plea, which was in the nature of a plea in abatement was held good, on demurrer, and, being admitted true so far as it stated the facts, appellant could not plead further to show cause against it, and his petition was dismissed.

The Pike County Court had jurisdiction to appoint the administrator, if any county in this State had it. The contention is that an alien resident who owns no estate in this country has nothing to be administered here by a personal representative; that the recovery allowed by the Constitution and statutes of this State for death caused by negligence does not belong to the decedent, nor to his estate, as a property right which belonged to the decedent; that the provisions create a right, but confer it ex necessitate rei upon citizens of this State only; that our laws can not have extra territorial force so as to confer personal rights upon non-residents or aliens. Section 241 of the Constitution of Kentucky is: "Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death, from the corporations and persons so causing the same. Until otherwise provided by law, the action to recover such damages shall in all cases be prosecuted by the personal representative of the deceased person. The General Assembly may provide how the recovery shall go and to whom belong; and until such provisions is made, the same shall form part of the personal estate of the deceased person." Section 6, Ky. Stats. 1903, is to the same effect, and in substantially the same language. This court will take notice that the governments of the United States and Italy are at peace. Hence the rule applicable to alien enemies can not apply.

In this country, a man's life, as well as his body, are deemed to be his own. He has here an inherent natural right to live, and for the protection of his life, liberty and property and the lawful pursuit of happiness all laws are made. They are not partial,

in that they protect citizens alone. They apply to
mankind within the jurisdiction of  the State. An
alien friend could not be lawfully deprived of his lib-
erty in this State without cause, and, if falsely im-
prisoned, might maintain his action to recover the
damages, not because our laws gave him the right to
his personal liberty, but because they recognize that
he already had the right. · If his personal property
was taken from him here without due process of law,
our courts administering the laws of this State would
restore it to him, albeit that in his own country he
might not have the right to own such property or to
maintain an action to recover it. This would not be
allowed here under the idea that our laws created in
him a right to the property, but that they recognized
that right as an incident to manhood. The law of this
State deems it best that all men should be secure in
their lives, liberty and property; not that some might
be, and others have no redress. The State concerns
itself with certain inalienable personal rights, declar-
ing that they exist in all men, and recognizing them
by the laws of this State as inhering to every person
who is within this State, and to all citizens of the
State wherever they may be.

The Constitution and statute, allowing compensa-
tion for life lost through negligence, of another, adopt
a policy touching the most important subject of all
government, in which it is recognized that human
life should be protected as well from negligence as
from crime. It is in the interest of society that it
should be. Giving to the estate of the victim of the
negligent act a right to recover compensation based
upon the earning value of the life destroyed, or in
addition punitive damages where the negligence is
gross, is deemed an efficacious remedy for a recog-

nized evil. It may be in certain instances in lieu of public punishment; but in any event its exaction will operate as a deterrent upon others, and thereby will tend to promote the safety of human beings. It could scarcely be said that a man has any greater right in his own life now than he had before the adoption of the constitutional provision and statutes of a kindred nature. His right originally was above all others, save where it is forfeited for crime. Nothing, therefore, could add to it. But these provisions give remedies through the courts that had not been previously administered. The application of the remedy by the courts is in pursuance of the public policy of the State to conserve human life within her jurisdiction. This policy is on a line with that which protects every person in his liberty and in his property, whether he be an alien or citizen, because it is best for the State that it should be so.

Perhaps an alien, may in his own government, have no right to own property, or even to claim his own life against the ukase of his government. But when he is here his natural rights, those which all the States of the Union agree he has by nature, such as the right to live and to have his liberty, are recognized as belonging to him, not as created by the States at all; for no State can confer the right to live. We treat him as a human being, who, if wronged while within our jurisdiction in any personal or property right, may be redressed in our courts according to the laws of this State, giving such measure of compensation as we deem a proper equivalent for the wrong done. Whether the person's own government would have given any redress for the same injury if done to him there is wholly immaterial.

The judgment overruling the demurrer to the amended answer and dismissing the petition is re-

versed, and cause remanded, with directions to sustain the demurrer to the amended answer, and for further proceedings not inconsistent herewith.