[Civ. No. 14836. Third Dist. Nov. 6, 1975.]

PHYLLIS A. DUFF et al., Plaintiffs and Appellants, v.
HARRAH SOUTH SHORE CORPORATION et al.,
Defendants and Respondents.

**COUNSEL**

James E. Kassis for Plaintiffs and Appellants.

Hardy, Erich & Brown, Leo H. Schuering, Jr., Maloney, Chase, Fisher & Hurst, Charles Negley, Fitzwilliam, Memering, Stumbos & DeMers and Donald Person and Gary L. Hall for Defendants and Respondents.

**OPINION**

**PARAS, J.**—This wrongful death action is brought by the surviving wife and son of Robert Duff, who committed suicide after losing money at the Nevada gambling casinos owned by defendants. Plaintiffs appeal from a judgment dismissing the complaint after demurrers to the first amended complaint were sustained without leave to amend.

The first amended complaint alleges that in 1967 "plaintiff, PHYLLIS DUFF and decedent, ROBERT DUFF, cancelled all of the check cashing accounts that they had with each of the . . . defendants," but that in 1970, "these check cashing accounts were reopened."

The complaint further alleges:

"That in reopening said check cashing accounts, the decedent and the plaintiff, PHYLLIS DUFF, entered into a contract in writing with the defendants, and each of them, which contract specified that specific limits would be placed upon the individual check cashing account of the decedent at each place of business of the defendants and that said limits were purposely placed at a low amount so that the decedent would not be tempted to spend more money gambling than these limits which he had set for himself and which limits were accepted in writing by the defendants, and each of them.

"   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"That the defendants, and each of them, agreed in writing to enforce the limits which the decedent had placed upon himself and which limits were accepted by the defendants, and each of them.

"   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"That because of the relationship which arose between the decedent and the defendants, and each of them, as a result of said contract, the defendants, and each of them, had a duty towards the decedent to protect the decedent by not allowing him to cash more checks than the limit which he had placed upon himself.

"   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"That on or about December 3, 1972, the defendants, and each of them, did for their own gain and benefit, breach the duty owed to the decedent by allowing decedent to cash checks far in excess of the limits which he had placed upon himself and that decedent gambled and lost all of the money from the checks he had cashed.

"   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"That the decedent, at the time of his breach of duty . . . was unemployed and did not have sufficient funds in the bank to cover the checks which he had cashed.

"   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"That the decedent became so despondent over the fact that defendants, and each of them, had cashed checks in excess of the limits agreed to, over the loss of the money from the checks he had cashed, and from the knowledge that he did not have the money to cover said checks, that he did have an uncontrollable urge and a loss of his ability to resist the impulse to take his own life and did, on December 3, 1972, as a direct and proximate result of the negligence of the defendants, and each of them, and of the uncontrollable urge and irresistable impulse, take his own life by placing an extension from the exhaust pipe of his car into an enclosed vehicle; and thereafter on December 3, 1972, decedent died at South Lake Tahoe, in the County of El Dorado, State of California."[1]

■ We conclude that this complaint does not state a cause of action; its facts show no duty to the decedent to refrain from accepting his checks in excess of the limit.

Plaintiffs claim that the defendants' duty was established by the allegations that there were contracts in writing between the deceased and each casino to cash checks only up to the specified limit.[2] ■ It is well established that a duty of care can arise from a contractual relationship, and a cause of action in tort may sometimes be allowed where there is a failure to perform a contractual duty, or where such duty is negligently performed. (*Eads* v. *Marks* (1952) 39 Cal.2d 807, 810 [249 P.2d 257]; *L. B. Laboratories, Inc.* v. *Mitchell* (1952) 39 Cal.2d 56 [244 P.2d 385]; *Heyer* v. *Flaig* (1969) 70 Cal.2d 223, 227 [74 Cal.Rptr. 225, 449 P.2d 161]; *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421].)

■ But here the complaint makes it clear that any contractual relationship was ended prior to or concurrently with its alleged breach,

---

[1]Plaintiffs' second cause of action seeking punitive damages has been abandoned on appeal in light of *Pease* v. *Beech Aircraft Corporation* (1974) 38 Cal.App.3d 450 [113 Cal.Rptr. 416].

[2]We seriously doubt that the establishment of a check cashing account creates any contract at all. Surely the casino cannot claim breach of contract if the customer later refuses to cash checks or even to patronize the casino at all. Nor do we envision a breach of contract liability by the casino for refusing the customer's demand to cash checks up to the full limit, or to cash any checks at all. The check cashing account would sensibly seem to be nothing more than an accommodation arrangement for mutual convenience, by which the risk of bad checks to the casino is minimized and the potential refusal to cash checks as well as the procedural delay to the customer normally incident thereto is likewise minimized. Restatement of Contracts, section 90 does not convince us otherwise. We do not, however, rest our decision upon this ground, because such matters are subject to express provisions, both oral and written, in the account itself; we do not know of their existence or nonexistence here.

for necessarily the decedent expressly requested permission to cash checks in excess of the limit. Analyzed by contract principles, the decedent's request was an offer to rescind the earlier contract and enter into a new one; defendants' assent was an acceptance of the offer; this rescinded the earlier contract *and its accompanying duties.* Accordingly, no duty to limit decedent's check cashing existed at the time that checks in excess of the limit were cashed.

Plaintiffs in effect argue that the defendants had a duty not to allow the decedent to rescind the contract. It makes just as much sense to argue that they had a duty to not let him kill himself. Barring extraordinary circumstances not involved here (e.g. *Tate* v. *Canonica* (1960) 180 Cal.App.2d 898 [5 Cal.Rptr. 28]), there are no such duties.

The demurrer was properly sustained on the foregoing ground, and it is therefore unnecessary to consider other issues raised by the parties. The judgment is affirmed.

Puglia, P. J., and Regan, J., concurred.