658 P.2d 1121

Estela E. **GUTIERREZ** and Maria Sota Vda De Talamantes as co-personal representatives of the Estate of Bernardo Talamantes a/k/a Hector M. Baylon, deceased, Plaintiffs-Appellees,

v.

**KENT NOWLIN CONSTRUCTION COMPANY, Defendant-Appellant.**

**No. 4931.**

Court of Appeals of New Mexico.

Sept. 29, 1981.

Timothy M. Sheehan, Sheehan & Sheehan, and William H. Carpenter, Albuquerque, for appellees.

Zachary L. McCormick, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for appellant.

## OPINION

HERNANDEZ, Chief Judge.

This is a wrongful death action. The defendant appeals from a judgment, entered on a jury verdict, in favor of plaintiffs.

The deceased, Bernardo Talamantes, was killed while in the course and scope of his employment with defendant. Defendant's insurance carrier paid all medical bills, and $1,500.00 in funeral expenses. The deceased left surviving him a widow and six minor children, all of whom were residents of the Republic of Mexico on the date of the accidental injury and death.

The defendant alleges six points of error which will be considered in sequence.

POINT I: The New Mexico Workmen's Compensation Act [Sections 52–1–1 to 52–1–69, N.M.S.A.1978] provided the exclusive remedy against the defendant.

The pertinent sections and subsections of the Act read as follows:

*Section 52–1–6(D):*

Such compliance with the provisions of the Workmen's Compensation Act, including the provisions for insurance, shall be, and construed to be, a surrender by the employer and the employee of their rights to any other method, form or amount of compensation or determination thereof, or to any cause of action at law, suit in equity or statutory or common-law right to remedy or proceeding whatever for or on account of such personal injuries or death of such employee than as provided in the Workmen's Compensation Act, and shall be an acceptance of all of the provisions of the Workmen's Compensation Act, and shall bind the employee himself, and for compensation for his death, shall bind his personal representatives, his surviving spouse and next of kin, as well as the employer, and those conducting his business during bankruptcy or insolvency.

*Section 52–1–8:*

Any employer who has complied with the provisions of the Workmen's Compensation Act [52–1–1 to 52–1–69 NMSA 1978] relating to insurance * * * shall not be subject to any other liability whatsoever for the death of or personal injury to any employee, except as provided in the Workmen's Compensation Act, and all causes of action, actions at law, suits in equity and proceedings whatever, and all statutory and common-law rights and remedies for and on account of such death of, or personal injury to, any such employee and accruing to any and all persons whomsoever, are hereby abolished except as provided in the Workmen's Compensation Act.

*Section 52–1–9:*

The right to the compensation provided for in this act, in lieu of any other liability whatsoever, to any and all persons whomsoever, for any personal injury accidentally sustained or death resulting therefrom, shall obtain in all cases where the following conditions occur:

A. at the time of the accident, the employer has complied with the provisions thereof regarding insurance;

B. at the time of the accident, the employee is performing service arising out of and in the course of his employment; and

C. the injury or death is proximately caused by accident arising out of and in the course of his employment and is not intentionally self-inflicted.

*Section 52–1–17:*

As used in the Workmen's Compensation Act unless the context otherwise requires, the following persons, and they only, shall be deemed dependents and entitled to compensation under the provisions of the Workmen's Compensation Act:

A. a child under eighteen years of age * * *;

B. the widow * * *; * * * only if * * legally entitled to be supported by him. * * *

*Section 52–1–52:*

Compensation shall be exempt from claim of creditors and from any attachment, garnishment or execution, and shall be paid only to such workman or his personal representative, or such other persons as the court may, under the terms hereof, appoint to receive or collect the same. *No claim or judgment for compensation, under this act shall accrue to or be recovered by relatives or dependents not residents of the United States at the time of the injury of such workman.* [Emphasis added.]

Section 41–2–3, N.M.S.A.1978 of the New Mexico Wrongful Death Act provides:

Every such action as mentioned in Section 41–2–1 NMSA 1978 shall be brought by and in the name or names of the personal representative or representatives of such deceased person, and the jury in every such action may give such damages, compensatory and exemplary, as they shall deem fair and just, taking into consideration the pecuniary injury or injuries resulting from such death to the surviving party or parties entitled to the judgment, or any interest therein, recovered in such action, and also having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect or default. The proceeds of any judgment obtained in any such action shall not be liable for any debt of the deceased * * * but shall be distributed as follows: * * * if there be a surviving husband or wife and a child or children or grandchildren, then equally to each, the grandchild or grandchildren taking by right of representation; * * * if there be none of the kindred hereinbefore named, then the proceeds of such judgment shall be disposed of in the manner authorized by law for the disposition of the personal property of deceased persons.

█ The defendant contends that the Workmen's Compensation Act provides the exclusive remedy against the employer in a case of this nature. Defendant, in support of this contention, cites us to *Gallegos v. Chastain,* 95 N.M. 551, 624 P.2d 60 (Ct.App. 1981) wherein we held that:

The exclusivity provisions have consistently been applied. "Our statutes could scarcely be more explicit in abolishing every statutory or common law right or remedy against the employer not provided by the Workmen's Compensation Act, accruing to any person whomsoever, which arises by reason of such injury." The plaintiffs, for their part, cite us to *Pedrazza v. Sid Fleming Contractor, Inc.,* 94 N.M. 59, 607 P.2d 597 (1980). The basic facts in that case are the same as in this case: The workman was killed while working. The natural mother of his children filed a complaint, in their behalf, for benefits under our Workmen's Compensation Act. The children were residents of the Republic of Mexico. The employer moved for dismissal claiming that the children were precluded from recovery by reason of § 52–1–52. The trial court granted the motion and our Supreme Court affirmed, despite a challenge to § 52–1–52 on due process and equal protection grounds. In so ruling, our Supreme Court had this to say:

It is important to note the exclusive nature and operation of workmen's compensation. If an employer and employee are covered by the Act, all their rights and remedies are defined exclusively by the Act. § 52–1–9, N.M.S.A.1978. As between the employer and the employee, all other common law and statutory actions are barred by the Act. This bar also applies to the employee's dependents *to the extent that they are covered by the Act.*

*Pedrazza, supra* at 61, 607 P.2d at 599 [Emphasis added.]

This opinion does not deny plaintiffs other avenues of recovery. The worker and his dependents are independent of and take separately from one another under the Act. *Therefore, the bar against using other legal remedies to recover for the injury or death of a worker cannot be raised against those dependents not covered by the Act.*

*Id.* at 63, 607 P.2d at 601 [Emphasis added.]

We, of course, are governed by the precedents of our Supreme Court. *Alexander v.*

*Delgado,* 84 N.M. 717, 507 P.2d 778 (1973). The defendant contends that the above quoted language is mere dictum and need not be followed in this case. We do not, however, consider the language to be in the category of mere dictum. Rather, it seems to us that the notion that the opinion would not necessarily foreclose other forms of recovery by non-resident alien dependents was the key to the Supreme Court's decision upholding the bar to recovery of Workmen's Compensation. Under these circumstances, we give serious consideration to the language of the Supreme Court in *Pedrazza.* While perhaps not essential to the decision, it is nonetheless an expression of the views of a majority of our Supreme Court who deemed the matter of sufficient importance to merit discussion. We choose to follow the lead of our Supreme Court and hold that our Workmen's Compensation Act does not bar this wrongful death action.

Some additional comments regarding the nature of a claim under our Wrongful Death Act, Sections 41–2–1 et seq., N.M.S. A.1978, and rules governing statutory construction are necessary. The wrongful death statute serves two important functions—deterrence and compensation.

[O]ur Death by Wrongful Act Statute has to some degree an objective of public punishment and was designed in part at least to act as a deterrent to the negligent conduct of others and thereby promote the public safety and welfare.

*Trujillo v. Prince,* 42 N.M. 337, 78 P.2d 145 (1938).

[A]n action for wrongful death * * * belongs to the beneficiaries and is designed to compensate for the loss of the relational interest existing between the beneficiaries and the deceased * * *. [T]he action for wrongful death has for its purpose the compensation of the survivors for the loss of benefits caused by the death of the deceased, and does not belong to the estate of the deceased or become an asset thereof.

*Wurtzinger v. Jacobs,* 33 Wis.2d 703, 148 N.W.2d 86 (1967). *See also Varney v. Taylor,* 77 N.M. 28, 419 P.2d 234 (1966).

New Mexico's Wrongful Death Act was enacted in 1882 and our Workmen's Compensation Act in 1929.

In interpreting a statute this court may presume that the legislature was informed as to existing law, and that the legislature did not intend to enact a law inconsistent with any existing law * * *. *City Commission of Albuquerque v. State,* 75 N.M. 438, 405 P.2d 924 (1965).

When two statutes cover the same subject matter, and they are capable of co-existing, then it is our duty to give effect to both. *City Commission of Albuquerque v. State, supra.* We believe both our opinion allowing common law recovery herein and the Supreme Court's opinion in *Pedrazza* do exactly this.

POINT II: The court's instruction allowing the jury to award damages without proof of monetary loss incorrectly stated New Mexico law.

The instruction referred to reads as follows:

If you find for the Plaintiff on the issue of liability, you must decide the amount of damages which would compensate for the monetary worth of the life of decedent had it continued.

In fixing damages, you should consider: (1) The monetary loss, or lack of it, to the family, but damages may be recovered without proof of such monetary loss; (2) The age, earning capacity, health, habits and probable duration of life of the decedent; (3) The monetary value of the personal services of the decedent to the family; (4) The aggravating or mitigating circumstances attending the conduct which results in death.

The weight to be given to the evidence upon such issues is for you to determine. It is your responsibility to award such damages as may be fair and just to both sides under all the circumstances of this case.

In fixing damages, deductions must be made from gross earnings or earning capacity, if any, for income taxes, social security taxes, other taxes and personal living expenses of the decedent.

Damages for future loss of money will be paid in lump sum, and a reasonable discount should be made for the future earning power of such lump sum.

You may not consider:

(1) The loss of decedent's society to the family;

(2) The grief or sorrow of the family; or

(3) The property or wealth of the survivors or the Defendant.

Your verdict must be based on evidence, not upon speculation, guess, or conjecture. You must not permit the amount of damage to be influenced by sympathy or prejudice.

Defendant correctly points out that at the time of trial there was no uniform jury instruction on damages in a wrongful death case. The instruction given by the trial court was a modification of a draft of proposed U.J.I. 18.30, which was subsequently adopted in large part by the Supreme Court. The controversy in this appeal concerns the part that was not so adopted. It is found in the last clause of the first subparagraph (1) of the court's instruction and reads: "but damages may be recovered without proof of such monetary loss." It should also be noted that the trial court deleted from U.J.I. 18.30 the bracketed elements of damages not relevant to this case, thus only instructing the jury on the element of the monetary worth of the life of the decedent.

The defendant contends that the allowance of damages without proof of monetary loss is contrary to New Mexico law. Further, it contends that the offending portion of the instruction was confusing and misleading to the jury. As support for its contentions, the defendant points to the fact that the language was deleted when U.J.I. 18.30 was adopted.

The fact that the jury instruction adopted by the Supreme Court differs from that given by the trial court does not ipso facto make the latter incorrect. The questions to be answered are: (1) was the ques-

tioned section a correct statement of the law; and (2) was it, when read in conjunction with the other parts of the instruction, inconsistent and therefore possibly misleading or confusing? The answer to both questions is NO. The case of *Stang v. Hertz Corporation*, 81 N.M. 348, 467 P.2d 14 (1970) gives the answer to the first question. There, the Court said:

> ... [Section] 22–20–3, supra [Section 41–2–3, NMSA 1978], clearly permits recovery by other than a statutory beneficiary, and recovery may be had even though there is no pecuniary injury to a statutory beneficiary. Damages are recoverable by proof of the worth of the life of the decedent, even though there is no kin to receive the award.

> \*    \*    \*    \*    \*    \*

> The statutes allowing damages for wrongful act or neglect causing death have for their purpose more than compensation. It is intended by them, also, to promote safety of life and limb by making negligence that causes death costly to the wrongdoer.

> \*    \*    \*    \*    \*    \*

> \* \* \* [T]he more reasonable construction of our statute [is] to the effect that substantial damages are recoverable without proof of pecuniary loss.

Thus, the subparagraph complained of was not an incorrect statement of the law. ▮ As to the second question it is our opinion that the language is plain and unambiguous and conveys a clear and definite meaning. Moreover, jury instructions are to be read as a whole and if when so read, they fairly reflect the issues and law applicable thereto, there is no reversible error. *Roybal v. Lewis*, 79 N.M. 227, 441 P.2d 756 (1968). When so read, the court's damage instruction was proper in all respects. The first paragraph informed the jury that the measure of damages was the monetary worth of the life of the decedent. The next paragraph told the jury four factors to consider in fixing such monetary worth. There followed several paragraphs of caveats cautioning the jury to be fair and not to speculate. Most importantly of all, the instruction explicitly told the jury not to consider such intangibles as loss of society or grief. The instruction, when considered as a whole, effectively put a "brake" on what elements of damages the jury could consider. Hence, no error occurred.

POINT III: The F.E.L.A. [Federal Employees Liability Act] does not apply to this action, and the court erred in giving the jury instructions designed for F.E.L.A. cases.

The three instructions complained of read as follows:

### INSTRUCTION NO. 11

It was the continuing duty of the defendant, as an employer, at the time and place in question, to use ordinary care under the circumstances there existing, to furnish the plaintiff with a reasonably safe place in which to work, and to use ordinary care under the circumstances, to maintain and keep the place of work in a reasonably safe condition. This does not mean, of course, that the employer is a guarantor or insurer of the safety of the place to work. The extent of the employer's duty is to exercise ordinary care, under the circumstances, to see that the place in which the work is to be performed is reasonably safe.

### INSTRUCTION NO. 12

It was the duty of the Defendant Kent Nowlin Construction Company to use ordinary care to provide its employees with safe tools and machinery and appliances with which to do their work and keep them in a safe condition. In exercising ordinary care, the corporation need not necessarily provide the latest or best tools, machinery and appliances which could have been provided to do the work.

### INSTRUCTION NO. 13

It was the duty of the Defendant Kent Nowlin Construction Company to exercise ordinary care to provide the Plaintiff with a sufficient number of employees to safely perform the work being done.

■ Defendant argues that these instructions interjected false issues and were repetitious. Defendant argues that these instructions interjected false issues into the law suit because they are very similar to U.J.I. Civ. 9.12, 9.13 and 9.14 which are to apply only in cases where common carriers by railroad are involved.

It is well established in this jurisdiction that each party is entitled to an instruction on his theory of the case if he has pled it and there is evidence upon which the theory might be supported.

*Mac Tyres, Inc. v. Vigil,* 92 N.M. 446, 589 P.2d 1037 (1979). The plaintiff pled negligence, failure to provide a safe place to work, failure to provide safe equipment and failure to provide sufficient employees to safely perform the work. Defendant does not argue that there was no evidence to support the giving of these instructions.

■ The instructions given were a correct statement of the law and applicable under the facts of this case. Under New Mexico law the master has the duty to furnish the servants in his employ a reasonably safe place in which to work. *Padilla v. Winsor,* 67 N.M. 267, 354 P.2d 740 (1960). Generally, it is the master's duty to provide his servants reasonably safe and suitable tools and equipment sufficient to do the work contemplated. *Brandt v. Richter,* 159 N.W.2d 471 (Iowa 1968).

It is not open to question that an employer owes a duty to his employee to supply him with tools and appliances that are reasonably safe for the work he assigns him.

*Norton v. Lumbra,* 127 Vt. 64, 238 A.2d 628 (1968).

It is also the duty of the employer to furnish a sufficient number of men to do the work with reasonable safety to all those engaged in its accomplishment.

*Todd v. Watson,* 501 S.W.2d 48 (Mo.1973).

Nor is the fact that the instructions modeled after the proposed U.J.I. for F.E.L.A. cases error. This Court has recently held that where there are no U.J.I. instructions on an issue, the trial court may use analogous U.J.I. instructions as a modeling point.

*McCrary v. Bill McCarty Construction Co.,* 92 N.M. 552, 591 P.2d 683 (Ct.App.1979). It is our opinion that these instructions did not interject a false issue and they were not repetitious.

POINT IV: The liability of the Employer may not be predicated on violations of O.S. H.A. (Occupational Safety & Health Act of 1970, 29 U.S.C.A., § 651 et seq.) regulations and the court's instructions allowing the jury to consider those regulations was erroneous.

■ The instruction complained of told the jury that there were certain federal safety standards in existence at the time of the occurrence which provided that cranes working near electrical lines shall have certain minimum clearance and further provided that an employee be designated to observe such clearances. The instruction concluded by informing the jury that a violation of the standards was evidence the jury could consider with all the other evidence in deciding whether the defendant was negligent.

The defendant complains that the instruction was erroneous because O.S.H.A. itself states that violations of regulations promulgated under it may not be used to create civil liability, 29 U.S.C. § 653(b)(4). Defendant concedes that the regulations may be used for guidance but asserts that their violation may not in and of itself prove negligence. In making these contentions, the defendant overlooks the basis of the trial court's instruction and mischaracterizes the instruction's directives.

The federal safety standards referred to in the instruction were not only promulgated pursuant to O.S.H.A., but they were also promulgated under the Contract Work Hours and Safety Standards Act. The work in which defendant was engaged at the time of the accident was contract work. In the contract the defendant explicitly contracted to conform its operation to the standards required by the Contract Work Hours and Safety Standards Act.

It is well established that a duty of care can arise from a contractual relationship,

and a cause of action in tort may sometimes be allowed where there is a failure to perform a contractual duty, or where such duty is negligently performed.

*Duff v. Harrah South Shore Corporation,* 52 Cal.App.3d 803, 125 Cal.Rptr. 259 (1975).

A party may be liable in negligence for the breach of a duty which arises out of a contractual relationship.

*Sasso v. Ayotte,* 155 Conn. 525, 235 A.2d 636 (1967). *See also Tipton v. Glower,* 67 N.M. 388, 356 P.2d 46 (1960).

Moreover, the instruction did not, by any stretch of the imagination, tell the jury that violation of the standards was in and of itself negligence. The instruction merely informed the jury that violation of the standards was a fact that jurors could consider. This is consistent with the defendant's concession that the regulations may be used for guidance and accordingly, defendant's fourth point is without merit.

POINT V: The fellow servant rule barred the plaintiff's claim against the defendant and the trial court erred in refusing to allow the employer to amend its answers and in refusing to instruct the jury with respect to the rule.

The fellow servant rule was adopted in New Mexico in 1892 in the case of *Lutz v. Alt. & Pac. R'y Co.,* 6 N.M. 496, 30 P. 912 (1892):

* * * [I]t is now the unquestioned law that damages cannot be recovered for injuries sustained by reason of the negligence of fellow servants. Negligence of such servants of a common employer is part of the risk which public policy requires that an employee take in entering upon a service in which there are fellow servants.

From the language of this quotation, it is readily seen that the fellow servant doctrine is nothing more than a species of assumption of the risk. *See also Alternman v. Jinks,* 122 Ga.App. 859, 179 S.E.2d 92 (1970).

Assumption of risk as an affirmative defense in New Mexico was abolished by our Supreme Court in *Williamson v. Smith,* 83 N.M. 336, 491 P.2d 1147 (1971). The language used by the Supreme Court in so doing leaves no doubt but that it intended the fellow servant doctrine to be buried in the same grave as the defense of assumption of the risk:

Assumption risk evolved in master and servant cases. As the United States Supreme Court has observed, it developed in response to the general impulse of the common law courts "to insulate the employer as much as possible from bearing the 'human overhead' which is an inevitable part of the cost—to someone—of the doing of industrialized business. The general purpose behind this development in the common law seems to have been to give maximum freedom to expanding industry."

\*       \*       \*       \*       \*       \*

The doctrine, being a manifestation of laissez faire economics, was a subject of criticism even during its early years. [Citations omitted.] As Justice Frankfurter later noted in the Tiller case, supra:

" * * * The notion of assumption of risk as a defense—that is, where the employer concededly failed in his duty of care and nevertheless escaped liability because the employee had 'agreed' to 'assume the risk' of the employer's fault—rested, in the context of our industrial society, upon a pure fiction."

\*       \*       \*       \*       \*       \*

The reasonableness of insulating business from human overhead, however valid it may have been during the moment of the industrial revolution, now runs directly counter to current social policy, as typified by the underlying theory of modern workmen's compensation legislation, both general and specifically in regard to the safety of work areas.

\*       \*       \*       \*       \*       \*

Finally, in the employer-employee frame of reference, the concept of assumption of risk is one hundred eighty degrees out of phase with our legal policy of requiring the employer to provide his employees with a reasonably safe place to work.

\*       \*       \*       \*       \*       \*

For these reasons, assumption of risk will no longer be a defense in New Mexico. . . .

In conformity with *Williamson* we hold that the fellow servant rule is no longer a defense in New Mexico. The trial court did not err in refusing to allow defendant to amend its answer and in refusing to instruct the jury with respect to the rule.

 POINT VI: There was no evidence to support the assumption that the decedent's earning capacity was equal to that of a United States citizen employed in construction work and the verdict is therefore not supported by the evidence.

Dr. Everett G. Dillman, an economist and statistician and plaintiff's expert witness, testified first as to his qualifications and then gave a detailed explanation of how he arrived at his opinion of the present value of decedent's earning capacity ($141,000). Defendant's counsel interposed only one objection to this testimony and that objection was sustained. Defendant's counsel did not move that all or any part of Dr. Dillman's testimony be excluded nor did he request that limitations be placed on the purpose for which the testimony could be considered. Defendant's counsel conducted a thorough and searching cross-examination of the basis for Dr. Dillman's opinion and his qualifications and possible bias. Several of the questions asked by defendant's counsel dealt with the fact that decedent was a Mexican national and in this country illegally. These questions did not alter Dr. Dillman's opinion.

 It is our opinion that plaintiff's evidence was more than sufficient to create a jury issue. The weight to be given to this evidence was for the jury to decide. We would remind counsel that an expert witness' opinions cannot be questioned for the first time on appeal when those opinions were admitted at trial without objection or motion to exclude. *See Hancock v. Beasley,* 14 N.M. 239, 91 P. 735 (1907); *Winder v. Martinez,* 88 N.M. 622, 545 P.2d 88 (Ct.App. 1975). We would also point out that:

> An illegal alien in the United States is entitled to the same rights to damages

that a citizen has under the tort laws of the state and federal government. *Low Moor Iron Co.* [*v. La Bianco's Adm'r.,* 106 Va. 83, 55 S.E. 532], supra. *Trotta's Adm'r v. Johnson, Briggs & Pitts,* 121 Ky. 827, 90 S.W. 540 (1906) says:

> We treat him [an illegal alien] as a human being, who, if wronged while within our jurisdiction in any personal or property right, may be redressed in our courts according to the laws of this state, giving such measure of compensation as we deem a proper equivalent for the wrong done. [90 S.W. at 541].

*Torres v. Sierra,* 89 N.M. 441, 553 P.2d 721 (Ct.App.1976).

 The defendant also complains of the excessiveness of the verdict in that it was some $30,000 higher than Dr. Dillman's figures. This complaint is manifestly without merit. Dr. Dillman only testified as to one element on damages in a wrongful death case, i.e. earning capacity. *See* U.J.I. 18.30. As we noted in *Baca v. Baca,* 81 N.M. 734, 472 P.2d 997 (Ct.App.1970), absence of proof of pecuniary injury does not preclude an award of damages.

Finding no error the judgment below is affirmed.

IT IS SO ORDERED.

SUTIN, J., concurs.