CHÁVEZ, Justice, specially concurring. I concur with the opinion authored by Justice Bosson because it strikes a reasonable balance between the New Mexico Legislature’s unquestionable policy decision that undocumented workers are to receive workers’ compensation benefits consistent with the federal requirements under the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359 (1986) (codified as amended in scattered sections of 8 U.S.C.). Nobody questions or challenges the Legislature’s policy decision, and for good reason. The reality is that undocumented workers are part of the history of New Mexico, having contributed the fruits of their labor to improve our economy and fill a void in the labor market that obviously exists both in New Mexico and throughout the United States. See generally David Becerra et al., Fear vs. Facts: Examining the Economic Impact of Undocumented Immigrants in the U.S., 39 J. Soc. & Soc. Welfare 111, 123-24 (Issue 4, Dec. 2012). Indeed, the undocumented worker generally works for the lowest wages in the toughest jobs. See Lori A. Nessel, Undocumented Immigrants in the Workplace: The Fallacy of Labor Protection and the Need for Reform, 36 Harv. C.R.-C.L. L. Rev. 345, 347 (2001) (“Undocumented workers by definition occupy a precarious position inU.S. society: their very presence at the workplace is at the same time unlawful and necessary to perform the most difficult work at the lowest wages.”). It has not been unusual for the United States to historically have had treaties with other countries under which undocumented workers and their dependents are guaranteed the same rights and privileges as nationals (citizen workers). 2 Arthur Larson, Workmen’s Compensation Law § 63.52 (1994). The humanitarian policy of the Legislature to allow workers’ compensation benefits for the undocumented worker is really no different than these treaties. To be sure, until 1983 the Legislature had specifically denied relatives or dependents of an undocumented worker any workers’ compensation benefits if the relatives and dependents were not residents of the United States. NMSA 1978, § 52-1-52 (1953, as recodified and amended through 1983). This legislative policy decision was the subject of the Supreme Court’s opinion in Pedrazza v. Sid Fleming Contractor, Inc., 94 N.M. 59, 607 P.2d 597 (1980), superseded by statute in the case at issue in this appeal, Gonzalez v. Performance Painting, Inc., 2011-NMCA-025, ¶ 15, 150 N.M. 306, 258 P.3d 1098, cert. granted, 2011-NMCERT-003, 150 N.M. 620, 264 P.3d 521. In Pedrazza, Salvador Ontiveros was killed while working for Sid Fleming. Id. at 61, 607 P.2d at 599. The natural mother of his children, Carmen Pedrazza, pursued a claim for workers’ compensation benefits on behalf of their children, all of whom were residents of the Republic of Mexico. Id. In 1980, workers’ compensation claims were litigated in district court. The district court denied the claim, relying on the provisions of Section 52-1-52. 94 N.M. at 61, 607 P.2d at 599. Pedrazza appealed, challenging the constitutionality of Section 52-1-52 on due process and equal protection grounds. 94 N.M. at 61, 607 P.2d at 599. A majority of the Supreme Court upheld the constitutionality of Section 52-1-52, 94 N.M. at 62-63, 607 P.2d at 600-01, and closed its opinion by stating: This opinion does not deny plaintiffs other avenues of recovery. The worker and his [or her] dependents are independent of and take separately from one another under the Act. Therefore, the bar against using other legal remedies to recover for the injury or death of a worker cannot be raised against those dependents not covered by the Act. Id. at 63, 607 P.2d at 601. Implicit in this statement was that Pedrazza, or other dependents of a deceased undocumented worker who do not reside in the United States, could pursue a tort action against the employer, assuming that they could prove that the employer’s negligence proximately caused the worker’s injury or death. The implication of an alternative remedy appears to have been a key rationale for a majority of this Court to have concluded that Section 52-1-52 did not deprive the dependents in Pedrazza of due process or equal protection. Almost three years after Pedrazza, this Court was given the opportunity to expressly hold what it had implicitly stated in Pedrazza. In Kent Nowlin Construction Co. v. Gutierrez, 99 N.M. 389, 658 P.2d 1116 (1983), Bernardo Talamantes, an undocumented worker, was killed while working for Kent Nowlin Construction Co. Id. at 389, 658 P.2d at 1116. Nowlin’s workers’ compensation carrier paid the medical and funeral expenses for Talamantes under the Workers’ Compensation Act, NMSA 1978, Chapter 52, Article 1. Kent Nowlin Constr. Co., 99 N.M. at 389, 658 P.2d at 1116. Talamantes’s relatives or dependents, who resided in the Republic of Mexico and were therefore not entitled to worker’s compensation benefits, brought a wrongful death lawsuit against Nowlin. Id. A jury returned a verdict in favor of Talamantes’s dependents. Id. The Court of Appeals affirmed the jury verdict, relying on the Supreme Court’s opinion inPedrazza, and specifically the language quoted above. Gutierrez v. Kent Nowlin Constr. Co., 99 N.M. 394, 398, 403, 658 P.2d 1121, 1125, 1130 (Ct. App. 1981). This Court granted Nowlin’s petition for writ of certiorari and reversed the Court of Appeals. Kent Nowlin Constr. Co., 99 N.M. at 389, 658 P.2d at 1116. A majority of this Court set aside the tort verdict holding that the Workers’ Compensation Act provided the exclusive remedy for the Talamantes dependents, despite the fact that they were not residents of the United States, and were therefore precluded from receiving any benefits under the Workers’ Compensation Act. Id. at 390-91, 658 P.2d at 1117-18. There simply was no remedy available to the Talamantes dependents underthe W orlcers’ Compensation Act, much less an exclusive remedy. Thus, the effect of this Court’s majority opinion was to deprive the Talamantes dependents of any remedy for the death of their loved one, despite a jury finding that Nowlin negligently took Talamantes’s life. Perhaps it was purely coincidental, or perhaps as an effort to ameliorate the harshness of the result in Nowlin, in 1984 the Legislature, almost as if to emphasize its policy decision to make workers’ compensation benefits available to undocumented workers, amended Section 52-1-52 to delete the language that deprived relatives or dependents who are not residents of the United States from recovering workers’ compensation benefits when their loved one is injured or killed while working in New Mexico. Compare 1983 N.M. Laws, ch. 78, § 1, with 1984 N.M. Laws, ch. 95, § 1. This history supports the conclusion that the Legislature definitively has made the policy decision to allow undocumented workers to recover workers’ compensation benefits when they are injured or killed during the course and scope of their employment with New Mexico employers. Although I question whether any undocumented worker should ever be deprived of modifier benefits based solely on his or her documented status, or for the reasons expressed in Justice Daniels’s special concurrence, I believe that the opinion authored by Justice Bosson reasonably balances the policy of the New Mexico Legislature to grant workers’ compensation benefits to undocumented workers and their dependents with the Immigration Reform and Control Act of 1986. I therefore concur. EDWARD L. CHÁVEZ, Justice