Filed 12/22/14  Breliant v. Boyd CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| GIANNA BRELIANT,<br><br>　　　　Plaintiff and Appellant,<br><br>　　　　v.<br><br>WARREN BOYD et al.,<br><br>　　　　Defendants and Respondents. | B251349<br><br>(Los Angeles County<br>Super. Ct. No. EC057245) |

　　　　APPEAL from an order of the Superior Court of Los Angeles Country, Donna Fields Goldstein, Judge.  Reversed in part.

　　　　Arent Fox, Stephen G. Larson, Steven E. Bledsoe, and R.C. Harlan, for Plaintiff and Appellant.

　　　　Gravitas Law Group and David J. Scharf, for Defendants and Respondents.

　　　　————————————————

Plaintiff Gianna Breliant appeals from an order sustaining a demurrer to the third amended complaint without leave to amend filed by respondents Warren Boyd and his business entity, Commerce Resources International, Inc. (jointly, Boyd).[1] The appeal challenges only the dismissal of the wrongful death cause of action based on the death of plaintiff's daughter, Amy Breliant.[2] As shall be explained, that part of the order is appealable.

We conclude the trial court erred in sustaining the demurrer to plaintiff's wrongful death cause of action and reverse that part of the order.

## FACTUAL AND PROCEDURAL SUMMARY

In an appeal arising from the sustaining of a demurrer, we accept as true the material allegations of the complaint. (*Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 401.) The facts as alleged in the third amended complaint, the operative pleading, are summarized as follows.

Boyd is a "self-styled 'interventionist[]'" who "provid[es] a narcotics treatment program and assistance to drug dependent persons." Boyd represents that he uses "'whatever means are necessary'" to achieve this goal, including "kidnapping and[/]or involuntary confinement of clients." Plaintiff alleges that her 21-year-old daughter, Amy, was "troubled by dependence on drugs" and "had physical and mental limitations in the form of emotional dependency, drug dependency and drug addiction." Concerned for her daughter's welfare, plaintiff "made inquiries and was ultimately referred to Boyd." Boyd "orally and impliedly offered to provide services, including care, supervision, treatment and security through the aforesaid sober companions and through [his] own efforts, and to keep Amy safe and away from drugs." With both plaintiff's and Amy's consent, Amy was placed under Boyd's care.

---

[1] In the interests of justice and judicial economy, we construe the trial court's order sustaining defendant's demurrer to incorporate a judgment (order) of dismissal. (*Bellah v. Greenson* (1978) 81 Cal.App.3d 614, 618, fn. 1.)

[2] Because plaintiff and her daughter share the same last name, we refer to the daughter by her first name; no disrespect is intended.

Though lacking an appropriate license to provide psychological counseling or medical care, Boyd "undertook to provide treatments for which physicians, nurses, psychologists and social workers must be licensed." He also allowed "unlicensed and unqualified" individuals to care for Amy. During the eight months preceding her death, Amy and her mother paid Boyd $222,000 for his "interventionist services." While under Boyd's care, Amy was placed in different houses, during which time Boyd's unlicensed and untrained "caregivers and 'sober companions'" supplied Amy with illegal drugs and injected substances into her body. No effective care was provided to Amy during this time. Instead, Amy was provided "marijuana and heroin or morphine," was not properly supervised, was not given "appropriate counseling and therapy," and was "isolated from her parents and family."

On September 21, 2010, Amy died of a drug overdose at a house belonging to Jacob Schmidt,[3] one of Boyd's alleged joint venture partners. The fatal drugs were provided by Boyd, Schmidt, or Joe Dolo (a "sober companion" who was staying with Amy at Schmidt's residence), or were obtained by Amy while away from Schmidt's residence.

Plaintiff sued Boyd, as well as other individuals who were not parties to this appeal, for breach of contract, fraudulent misrepresentation, fraudulent concealment, constructive fraud, dependent adult abuse, wrongful death, and unfair business practices. All causes of action except wrongful death were brought in plaintiff's capacity as successor in interest to Amy. The wrongful death claim that is the subject of this appeal was brought in plaintiff's individual capacity. After plaintiff amended her complaint twice, the trial court sustained Boyd's demurrer without leave to amend as to all causes of action except breach of contract and fraudulent misrepresentation. It allowed plaintiff to file a fourth amended complaint as to those claims in order to clarify her standing as a successor in interest to Amy. In this proceeding, plaintiff appeals only the portion of the

---

[3] Schmidt is not a party to this appeal.

3

trial court's order sustaining the demurrer as to the wrongful death cause of action.[4]

## DISCUSSION

### I

Generally, an appeal may not be taken from an order sustaining a demurrer without leave to amend. (*Gu v. BMW of North America, LLC* (2005) 132 Cal.App.4th 195, 202.) However, an exception exists when an ordinarily nonappealable order is a final determination of a party's rights in a certain capacity, that is, plaintiff is considered a "separate party as to whom there was no issue left to be determined." (*Dominguez v. City of Alhambra* (1981) 118 Cal.App.3d 237, 241.) In this case, plaintiff brought several claims before the superior court. Only her wrongful death claim was brought in her individual capacity; the others were brought in her capacity as successor in interest to Amy. The appealability of the portion of the order dismissing the wrongful death claim turns on whether such a claim is brought in a different capacity from claims brought as successor in interest. We conclude the wrongful death claim was brought in a different capacity and find the appeal as to that portion of the order is properly before us.

Code of Civil Procedure section 377.11 defines a decedent's successor in interest as "the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of the property that is the subject of a cause of action." A person acting as a decedent's successor in interest "'step[s] into [the decedent's] position[]' as to a particular action." (*Exarhos v. Exarhos* (2008) 159 Cal.App.4th 898, 905.) In contrast, a wrongful death claim brought in one's individual capacity belongs "'not to the decedent,'" but to the person bringing the suit. (*Wilson v. John Crane, Inc.* (2000) 81 Cal.App.4th 847, 860.)

Where, as here, claims are brought by a single plaintiff acting in two different capacities, there are two different plaintiffs. (*Quiroz v. Seventh Ave. Center* (2006)

---

[4]    An appeal challenging the rest of the order is pending. (*Breliant v. Boyd et al.* (B255908, app. pending).) That appeal also challenges the judgment, entered against plaintiff, after the trial court granted Boyd's motion for terminating sanctions as to the claims that survived demurrer.

4

140 Cal.App.4th 1256, 1278 (*Quiroz*).) In *Quiroz*, Maria Quiroz brought a wrongful death claim in her individual capacity against the nursing facility at which her son, the decedent, was residing when he died. (*Id.* at p. 1266.) Quiroz then filed a first amended complaint adding a negligence cause of action brought in her separate capacity as decedent's successor in interest. (*Id.* at p. 1267.) The trial court struck the negligence claim as barred by the statute of limitations. (*Id.* at p. 1276.) Since the wrongful death cause of action was timely filed, Quiroz argued that the negligence claim could be salvaged through the relation-back doctrine. (*Id.* at p. 1277.) The court held it could not, since the two claims were brought by Quiroz "acting in two separate capacities with respect to each." (*Id.* at p. 1278.) Because the negligence claim pleaded injury to decedent and the wrongful death claim concerned only injury to Quiroz, "[a]s a matter of law, these distinct claims [were] technically asserted by different plaintiffs." (*Ibid.*)

The same circumstance exists here. Though under one lawsuit, the claims asserted in the case below were, as a matter of law, brought by two plaintiffs: by plaintiff in her capacity as Amy's successor in interest and by plaintiff in her individual capacity. The trial court's order sustaining the demurrer to the wrongful death claim was, "in effect, a final determination" of plaintiff's rights in her individual capacity because in that capacity, plaintiff "was a separate party as to whom there was no issue left to be determined." (*Dominguez v. City of Alhambra*, *supra*, 118 Cal.App.3d at p. 241.)[5] We therefore find that the dismissal of plaintiff's wrongful death claim is appealable.

---

[5] We note that the holding of *Peterson v. John Crane, Inc.* (2007) 154 Cal.App.4th 498 (*Peterson*), at first glance, seems to be at odds with *Quiroz*. In finding that causes of action asserted in plaintiff's capacities as an individual, successor in interest, and heir to the decedent were asserted by a single plaintiff, the court stated the "multiple capacities merely reflected why [the plaintiff], as a singular party, had standing to assert different types of claims." (*Peterson*, at p. 507.) However, the court limited its analysis to the context of Code of Civil Procedure section 998 offers. (*Id.* at pp. 506-507.) It stated *Quiroz* was not instructive because the case "did not deal with a section 998 offer and did not determine whether an individual who sues in different capacities should be entitled to separate or apportioned section 998 offers." (*Peterson,* at p. 508.) Since the present case also does not involve section 998 offers, *Peterson* does not control, and we follow the reasoning of *Quiroz*.

5

II

"A demurrer tests the legal sufficiency of factual allegations in a complaint. [Citation.]" (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 42-43.) A trial court's order of dismissal following the sustaining of a demurrer is reviewed de novo. (*Id.* at p. 43.) The allegations contained in the pleading must be liberally construed, "with a view to substantial justice between the parties." (Code Civ. Proc., § 452.) We treat the demurrer as "admitting all material facts *properly pleaded*, but not contentions, deductions, or conclusions of fact or law." (*Rakestraw*, at p. 43, italics added.) "Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) Where allegations contained in the operative pleading concern matters "'peculiarly within the knowledge of the adverse party,'" they may be pleaded upon information and belief. (*Dey v. Continental Central Credit* (2008) 170 Cal.App.4th 721, 725, fn. 1, quoting 4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 398, p. 538.) Less particularity is required of the allegations in the complaint if the defendant has a knowledge of the facts superior to the plaintiff. (*Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 236.)

Boyd contends the wrongful death claim relied "entirely" on facts improperly pleaded because they were based upon information and belief without stating the basis for that belief. (See *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 551, fn. 5 [allegations based upon information and belief must be accompanied by information leading plaintiff to believe that allegations are true].) However, in this case essential allegations establishing the wrongful death cause of action were pleaded affirmatively, not upon information and belief. The representations made by Boyd to Amy and plaintiff were pleaded affirmatively, plaintiff also affirmatively pleaded that Amy died in Schmidt's home of a heroin overdose, and that Boyd failed to adequately supervise Amy, provided her with drugs, and isolated her from her family. An allegation pleaded upon information and belief—that "either Boyd, Schmidt or Dolo provided heroin to Amy or she obtained heroin on her own"—was preceded by an explanation that there was a

6

"limited number of persons who were or may have been at the Schmidt home" on the night of Amy's death. We note the complaint contained other allegations pleaded upon information and belief. We do not address them because the properly pleaded allegations just summarized are sufficient to state a cause of action for wrongful death.

Boyd also argues plaintiff committed perjury because she alleged Boyd provided Amy with a lethal dose of heroin and, in the alternative, Amy obtained the drugs on her own. According to Boyd, plaintiff may not allege "mutually exclusive, inconsistent and antagonistic factual allegations." He points to *Beatty v. Pacific States S. & L. Co.* (1935) 4 Cal.App.2d 692, 697, which states the pleader may not "blow both hot and cold in the same complaint on the subject of facts of which he purports to speak with knowledge under oath." Plaintiff does not affirmatively plead the challenged allegations; instead, she does so upon information and belief. As explained above, she adequately explains the basis for this belief. Boyd does not point to any part of plaintiff's complaint that bases these allegations upon her own knowledge.

III

The trial court sustained Boyd's demurrer to plaintiff's wrongful death claim because the operative pleading failed to "identify the negligent or other wrongful act committed by the Defendants that caused the death of Amy Breliant." Instead, the court reasoned, the operative pleading "merely repeat[ed] allegations regarding the alleged breach of contract and the alleged fraudulent conduct."

Code of Civil Procedure section 377.60 defines wrongful death as a "cause of action for the death of a person caused by the wrongful act or neglect of another." "The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs. [Citations.]" (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 938, p. 352.)

The operative pleading properly pleads negligent acts that more likely than not caused Amy's death.[6] "In any action for wrongful death resulting from negligence, the complaint must contain allegations as to all the elements of actionable negligence. [Citation.] Negligence involves the violation of a legal duty imposed by statute, contract or otherwise, by the defendant to the person injured, e.g., the deceased in a wrongful death action. [Citation.]" (*Jacoves v. United Merchandising Corp.* (1992) 9 Cal.App.4th 88, 105.)

A.      *Duty Arising from Contractual Obligations*

Boyd argues that a failure to fulfill contractual obligations cannot, as a matter of law, form the basis of a wrongful death action. However, "a duty of care can arise from a contractual relationship, and a cause of action in tort may sometimes be allowed where there is a failure to perform a contractual duty, or where such duty is negligently performed." (*Duff v. Harrah South Shore Corp.* (1975) 52 Cal.App.3d 803, 806; see also *North American Chemical Co. v. Superior Court* (1997) 59 Cal.App.4th 764, 774.) In this case, the duty of care was established by Boyd's representations to Amy that she would be "supervised, cared for," and "secure in her person," and that Boyd would use "any means necessary" to ensure Amy would be assisted in adopting a drug-free lifestyle. The contract between Amy and Boyd is significant only in that it imposed a duty of care onto Boyd. It is clear from the allegations of the complaint, taken as true at this stage, that Boyd negligently performed this duty or negligently failed to perform it at all. The complaint alleged Amy was "without adequate supervision," "provided with drugs including marijuana and heroin or morphine," "assigned . . . to live in one locale after another with untrained 'sober companions,'" and "isolated from her parents and family." On the day Amy died, she was given a "lethal dose" of drugs or was permitted to leave the house and obtain the drugs on her own. Despite Boyd's duty to keep Amy away from

---

[6]      In addition to negligence, plaintiff alleges fraud by misrepresentation, fraud by concealment, and dependent adult abuse as underlying wrongful acts that caused the wrongful death of Amy. Because we find that negligence was sufficiently pleaded to establish a wrongful death cause of action, we do not address plaintiff's other arguments.

8

drugs, Amy died of a heroin overdose in the house belonging to Schmidt, who was alleged to be in a joint venture with Boyd. (*Breliant v. Fujihara* (Oct. 22, 2014, B249378) [nonpub. opn.].) Regardless of whether Amy obtained the drugs on her own or was provided with them by Boyd or his associates, the allegations that Boyd was negligent in leaving Amy unsupervised and with access to a lethal dose of heroin are sufficient to withstand demurrer. The truth of these allegations must be determined at a future date.

B.    *Special Relationship*

Plaintiff also alleges that Boyd maintained a "special and confidential relationship" with Amy, which imposed upon him a duty of care. "Under traditional tort law principles, a person is not ordinarily liable for the actions of another and is under no duty to protect another person from harm. [Citation.] An affirmative duty to protect another from harm may arise, however, where a 'special relationship' exists. [Citations.] Such a special relationship is typically where the [individual] is particularly vulnerable and dependent upon the defendant who, correspondingly, has some control over the [individual's] welfare. [Citation.]" (*Kockelman v. Segal* (1998) 61 Cal.App.4th 491, 498-499.) Courts have found the existence of a special relationship between in-patient facilities and their patients because the facilities took charge of their patients' daily lives, maintained control over them, and provided medical or psychological treatment. (E.g., *Klein v. BIA Hotel Corp.* (1996) 41 Cal.App.4th 1133, 1135-1136, 1142 [residential care facility for the elderly]; *Hata v. Los Angeles County Harbor/UCLA Medical Center* (1995) 31 Cal.App.4th 1791, 1800, fn. 9 [hospital].)

Amy was, at the time of her death, a 21-year-old "troubled by dependence on drugs." Boyd specifically marketed his services to "drug dependent individuals," representing in published statements that he used "'whatever means are necessary' in order to end [his clients'] drug dependence and use[,] . . . includ[ing] kidnapping and[/]or involuntary confinement." Amy lived in the homes of Boyd's associates and remained "isolated from her parents and family" while under Boyd's care. As Boyd maintained control over many aspects of Amy's life, her welfare was necessarily dependent upon the

9

quality of care that Boyd provided. Additionally, Boyd and his associates, though unlicensed to provide psychiatric or medical treatments, "undertook to provide treatment for which physicians, nurses, psychologists and social workers must be licensed before providing," which included "psychological counseling, dispense[ment of] drugs," and "inject[ion of] substances" into Amy's body. The nature of the services supposedly being provided to Amy, coupled with her vulnerability and dependence upon Boyd's care, established a special relationship and a duty of care. As the allegations, if true, show Boyd failed to fulfill that duty, and that Amy died as a result, they are sufficient to withstand demurrer.

We conclude that the trial court erred in sustaining Boyd's demurrer to the wrongful death claim. The operative pleading sufficiently states facts that, if true, entitle plaintiff to relief.

## DISPOSITION

The portion of the trial court's order dismissing the wrongful death cause of action against Boyd and Commerce Resources, International, Inc. is reversed. Plaintiff is entitled to her costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**


EPSTEIN, P. J.


We concur:




WILLHITE, J.                                    MANELLA, J.


10